Richard E. BROWN, on behalf of himself and all others similarly situated,

v.

UNITED STATES of America et al., Appellees, Richard E. Brown and David L. Taylor, Appellants.

No. 73–1996.

United States Court of Appeals, Third Circuit.

Argued June 24, 1974.

Decided Dec. 31, 1974.

As Amended Jan. 24, 1975.

Harold E. Kohn, Aaron M. Fine, Allen D. Black, Arthur M. Kaplan, Mark E. Goldberg, Philadelphia, Pa., for appellants.

Irving Jaffe, Washington, D. C., Robert E. J. Curran, Philadelphia, Pa., Robert E. Kopp, Michael Kimmel, U. S. Dept. of Justice, Washington, D. C., for appellees.

Before ADAMS, HUNTER and GARTH, Circuit Judges.

## OPINION OF THE COURT

JAMES HUNTER, III, Circuit Judge:

This is a class action brought by individuals who were convicted by special courts-martial that were convened by officers in the United States Navy and Marine Corps under what the United States Court of Military Appeals subsequently held was an improper conferral of convening authority by the Secretary of the Navy under Article 23(a)(7), UCMJ, 10 U.S.C. § 823(a)(7) (1970). United States v. Greenwell, 19 U.S.C. M.A. 460 (1970). The plaintiffs claim that the *Greenwell* decision renders their convictions void and they seek to have their military records corrected accordingly. They also seek to recover the forfeiture of pay and allowances adjudged at their courts-martial as well as other damages.

■■ The determinative question in this appeal is whether the decision of the United States Court of Military Appeals in *Greenwell* should be given prospective or retrospective application.[1] If that

---

1. The appellees do raise two preliminary objections which, if meritorious, would lead to dismissal of the appeal without a decision on the retroactivity issue. However, we do not feel that either has merit. These claims are:

1) that Article 76, UCMJ, 10 U.S.C. § 876 (1970), bars any collateral attack on a court-martial conviction except through a writ of habeas corpus; and 2) that the entire action is barred under the doctrine of *res judicata*.

case is given retrospective effect, the plaintiffs have what appears to be a good cause of action. On the other hand, if it is limited to prospective application only, a good cause of action is not stated.

This issue was presented to the district court by way of cross motions for summary judgment and that court ruled that *Greenwell* should only be given prospective application. As a result, the defendants' motion was granted and the plaintiffs filed this appeal. We have concluded that the district court's decision was correct and accordingly affirm.

In *Greenwell*, the special court-martial that convicted and sentenced the defendant was convened by the Commanding Officer, Student Company, Marine Corps Base, Camp Pendleton, California. That commander had gained the authority to convene special courts-martial when the Commanding General of Camp Pendleton designated Student Company a "separate and detached command for disciplinary purposes." Under the language of section 0103b(5), Manual of the Judge Advocate General, Department of the Navy, this designation automatically conferred convening authority upon the commanding officer of the unit so designated. That section read as follows:

"b. Special courts-martial. In addition to those officers otherwise authorized [to convene special courts-martial] by article 23(a)(1) through (6), UCMJ, [10 U.S.C. § 823(a)(1)–(6) (1970)] the following officers are, under the authority granted to the Secretary of the Navy by article 23(a)(7),

UCMJ, empowered to convene special courts-martial:

\* \* \* \* \* \*

"(5) All commanding officers and officers in charge of commands now or hereafter designated as separate or detached commands by a flag or general officer in command. . . ."

In *Greenwell*, the United States Court of Military Appeals decided that conferral of special court-martial convening authority by the method set forth in section 0103b(6), JAG Manual, was illegal. The court began its discussion by noting that that section was explicitly designed to grant convening authority solely pursuant to the Secretary of the Navy's statutory authority under Article 23(a)(7), UCMJ, 10 U.S.C. § 823(a)(7) (1970). It then observed that under Article 23(a)(7) only commanding officers who are "empowered by the Secretary concerned" can convene special courts-martial, and interpreted this language to mean that the granting of convening authority under 23(a)(7) could only be effective if that power was personally conferred by the Secretary himself.[2]

Under this view of the statute, the conferral of convening authority upon the Commanding Officer of Student Company under the procedure set forth in section 0103b(5), JAG Manual, became suspect since he did not receive his authority directly from the Secretary. Instead, the Secretary conferred convening authority upon the commanding officers of all commands designated as "separate or detached" by a flag or general officer

---

The first contention was exhaustively discussed by the district court and we reject the claim based on its decision. Opinion of the district court, 365 F.Supp. 328, 332–336 (1973). The second claim is without merit and will be rejected without further discussion.

Finally, we should note the appellees' contention that the district court erred in finding that it had mandamus jurisdiction. Since the government concedes that there is Tucker Act jurisdiction, Brief of Appellee at 24, we must reach the merits of the appeal in any case. As a result, since we ultimately reject the plaintiffs' underlying cause of action,

there is no need to finally decide whether mandamus jurisdiction exists since a decision on this question would do no more than expand or narrow the remedies available to the plaintiffs if they prevailed on the merits.

**2.** Article 23(a)(7), UCMJ, 10 U.S.C. § 823(a)(7) (1970), reads as follows:

"(a) Special courts-martial may be convened by—

\* \* \* \* \* \*

"(7) the commanding officer or officer in charge of any other command when empowered by the Secretary concerned."

in command. It was only when the Commanding General at Camp Pendleton conferred that designation on Student Company that the Secretary's authority was, in turn, conveyed to its commanding officer.

The court felt that under this two-step procedure, the Secretary had, in effect, delegated his power to grant convening authority under Article 23(a)(7) to the general officers that designated units as "separate or detached." As a result, the court concluded that conferral of that power on the Commanding Officer of Student Company was invalid and that courts-martial convened by commanders operating under authority conveyed by the two-step procedure set out in section 0103b(5), JAG Manual, were void.

The appellants, in the present case, present two arguments to support their claim that this decision in *Greenwell* has retroactive effect. Their first claim is that the parties to this case have already litigated the issue before the United States Court of Military Appeals and that that court ruled that *Greenwell* was retroactive. Thus, they contend that the appellees are barred from relitigating the issue under the doctrine of collateral estoppel. Their second claim is that *Greenwell* is retroactive in any case under the relevant judicial tests.

## I.

The appellants' collateral estoppel claim rests upon the decision of the Court of Military Appeals in Ferry v. United States, 22 U.S.C.M.A. 339 (1973). In that case, the government, by certificate of the Judge Advocate General of the Navy, initiated an appeal to the highest military court in a case involving a member of the plaintiff class. The defendant Ferry had been convicted of a crime and at the trial's sentence proceedings the government had sought to have a prior conviction introduced. This request was denied because the prior conviction was rendered by a special court martial convened by a commander who had received his convening authority under the procedure subsequently ruled improper in *Greenwell*.

The government, in its appeal in *Ferry,* contended that this prior conviction was not in any way affected by *Greenwell* because it had been completed before the *Greenwell* decision was handed down. Thus, the question certified to the Court of Military Appeals read as follows:

"Does the decision of the United States Court of Military Appeals in United States v. Greenwell, 19 USC-MA 460, 2 CMR 42 (1970), have retroactive application, so as to render Prosecution Exhibit 3 (the record of conviction by a 1969 special court-martial convened pursuant to the *JAG Manual* provision found to be legally ineffective in *Greenwell*) inadmissible in evidence?"

■ We agree with the appellant when he suggests that the retroactivity issue presented in the instant case was also squarely presented to the court in *Ferry.* However, this fact alone does not make collateral estoppel operative since that doctrine only precludes "the relitigation of issues *actually decided* in former judicial proceedings." Scooper Dooper, Inc. v. Kraftco Corp., 494 F.2d 840, 844 (3d Cir. 1974) (emphasis added); *accord,* Blonder Tongue Laboratories, Inc. v. University Foundation, 402 U.S. 313, 323, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971); Lynne Carol Fashions, Inc. v. Cranston Print Works Co., 453 F.2d 1177, 1182 (3d Cir. 1972).

In *Ferry,* the actual decision of the court did not reach the question certified to the court. Instead, Judge Quinn, writing the opinion of the court, framed his decision as follows:

"Whatever effect *Greenwell* may have on a conviction in other situations, we have no doubt that a conviction invalid under *Greenwell* cannot be used to increase the sentence for a later offense. . . . ." 22 U.S.C.M.A. at 340.

Thus, he specifically limited his holding to the facts presented in that case and refrained from deciding the broad question presented by the litigants.

Since Chief Judge Darden's concurring opinion indicates an intent to follow Judge Quinn's decision on this issue,[3] we conclude that the majority of the court in *Ferry* did not reach the question of *Greenwell's* overall retroactivity. As a result, the *Ferry* decision does not bind us on that issue and we are free to decide it in this litigation.[3a]

## II.

When we look to the merits of the retroactivity issue, we are faced at the outset with a threshold requirement that must be met before a limitation on the retroactivity effect of a decision can even be considered. In Chevron Oil Co. v. Huson, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), the Supreme Court indicated that,

> "... the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied ... or by deciding an issue of first impression whose resolution was not clearly foreshadowed. ..." *Id.* at 106, 92 S.Ct. at 355.

■ Appellant contends that this threshold requirement is not met. We cannot agree. While no past precedent was overruled by *Greenwell*, we feel the case did decide "an issue of first impression whose resolution was not clearly foreshadowed" so that it falls within the second part of the test laid out in *Chevron Oil.*

The only case we are referred to that arguably touched on the issue in *Greenwell* before that case was decided is United States v. Ortiz, 15 U.S.C.M.A. 505 (1965), petition for reconsideration denied, 16 U.S.C.M.A. 127 (1966). In that case, as in *Greenwell,* the legality of the conveyance of special court-martial convening authority to a company commander under section 0103b(5), JAG Manual, was under review. However, at the time of the *Ortiz* decision, section 0103b(5), JAG Manual, was written in a way that made it unclear whether that section conferred the special court-martial convening authority enumerated in Article 23(a)(6), UCMJ, or the authority enumerated in Article 23(a)(7).[4] Thus, in *Ortiz* the court first concluded that section 0103b(5), JAG Manual, only conferred the convening authority that is outlined in Article 23(a)(6) and only then went on to hold that the procedure outlined in that section was improper.

By first interpreting section 0103b(5), JAG Manual, in this way, the court was able to limit itself to a single statutory question; that is, the validity of section 0103b(5), JAG Manual, as a conveyance of Article 23(a)(6) authority. By the time the *Greenwell* case arose, however, section 0103b(5), JAG Manual, had been re-written so that the section no longer conferred Article 23(a)(6) convening authority and instead unequivocally conferred the convening authority enumerated in Article 23(a)(7). As a result, the court in that case had to decide the issue

---

**3.** Chief Judge Darden's discussion of this issue reads as follows:

> "I concur in Judge Quinn's determination that the retroactivity of our decision in United States v. Greenwell ... prohibits the use of a conviction that it invalidates to enhance the punishment of the accused in a subsequent trial."

**3a.** It may well be, as appellant suggests, that a decision cannot be retroactive for a single purpose without being retroactive for all purposes. *See* Reply Brief of appellants at 9. However, the court in *Ferry* apparently felt that they could order retroactivity for a particular purpose only. Thus, even if this assumption was incorrect, the fact that it was

made means that that court did not decide the broad issue of retroactivity that is before us in this case.

**4.** These sections read as follows:

> "(a) Special courts-martial may be convened by—
>
> \*  \*  \*  \*  \*  \*
>
> (6) the commanding officer of any separate or detached command or group of detached units of any of the armed forces placed under a single commander for this purpose; or
>
> (7) the commanding officer or officer in charge of any other command when empowered by the Secretary concerned."

that the *Ortiz* court avoided: the validity of section 0103b(5), JAG Manual, as a conveyance of Article 23(a)(7) convening authority. Thus, the issue decided in *Ortiz* was entirely distinct from the issue decided in *Greenwell* and the *Greenwell* decision involved an issue of "first impression" within the meaning of the *Chevron Oil* case.

Moreover, we cannot conclude that the *Greenwell* decision was "clearly foreshadowed" by the decision in *Ortiz*. Indeed, the court in *Ortiz* closed its opinion denying the government's petition for reconsideration with the following statement:

"In summary, as we said before, we have no reservations about the broad powers of the Secretary of the Navy under Code, *supra*, Article 23(a)(7), to empower commanding officers, such as that of the 2d Bridge Company, to convene special courts-martial. In the regulations before us, he has not done so. In consequence, we adhere to our original opinion and reaffirm our previous decision in the case." 16 U.S.C. M.A. at 131.

Thus, the decision in *Ortiz* did not clearly foreshadow the narrow reading of Article 23(a)(7) announced in *Greenwell*. On the contrary, it specifically affirmed the Secretary's "broad" power under that Article.[5]

As a result, we believe that the *Greenwell* decision fits the second part of the *Chevron Oil* test. It decided "an issue of first impression whose resolution was not clearly foreshadowed." 404 U.S. at 106, 92 S.Ct. at 355. We conclude therefore that it is a decision that can properly be considered for prospective application under the relevant judicial criteria.

The next question that must be resolved is precisely what criteria should be used in order to decide whether *Greenwell* is to be given prospective or retroactive effect. The government assumes that the relevant criteria are those set out in Stovall v. Denno, 388 U.S. 293, 297, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). The appellants, however, strongly suggest that the rule set out in Robinson v. Neil, 409 U.S. 505, 93 S.Ct. 876, 35 L.Ed.2d 29 (1973) and United States v. United States Coin & Currency, 401 U.S. 715, 91 S.Ct. 1041, 28 L.Ed.2d 434 (1971) must be applied.

In Gosa v. Mayden, 413 U.S. 665, 93 S.Ct. 2926, 37 L.Ed.2d 873 (1973), the dissenting opinion of Justice Marshall summarized the decisions relied upon by the appellants in the following way:

"Robinson involved the retroactive application of the decision in Waller v. Florida, 397 U.S. 387, 90 S.Ct. 1184, 25 L.Ed.2d 435 (1970), that the Fifth Amendment's guarantee, made applicable to the States through the Fourteenth Amendment, that no person should be put twice in jeopardy for the same offense barred an individual's prosecution for a single offense by both a State and a municipality of the State, that is, a legal subdivision of the State. *United States Coin & Currency* held retroactive the Court's prior determination that the Fifth Amendment privilege against compulsory self-incrimination barred the prosecution of gamblers for failure to register and to report illegal gambling proceeds for tax purposes, see Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968); Grosso v. United States, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968).

In deciding whether to give retroactive effect to *Waller, Marchetti,* and *Grosso,* the Court rejected contentions that it should apply the three-prong

---

5. The appellants also contend that the *Greenwell* decision was "clearly foreshadowed" by a letter of the Secretary of the Navy written on September 21, 1942. Appendix to Brief of Appellee at 7c–8c. The letter states that the Secretary cannot delegate his power to designate convening authorities to others.

However, in *Greenwell* the question was not whether the Secretary could delegate his authority. The only issue was whether the two-step process set out in section 0103b(5), JAG Manual, did, in fact, constitute a delegation. Thus, we cannot accept the suggestion that the Secretary's letter clearly foreshadowed the decision in *Greenwell*.

test employed in cases such as Stovall [v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967)], Desist [v. United States, 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969)], and De-Stefano [v. Woods, 392 U.S. 631, 88 S.Ct. 2093, 20 L.Ed.2d 1308 (1968)]. In *United States Coin & Currency*, Mr. Justice Harlan, speaking for the Court explained:

'Unlike some of our earlier retroactivity decisions, we are not here concerned with the implementation of a procedural rule which does not undermine the basic accuracy of the factfinding process at trial. Linkletter v. Walker, 381 U.S. 618 [, 85 S.Ct. 1731, 14 L.Ed.2d 601] (1965); Tehan v. Shott, 382 U.S. 406 [, 86 S.Ct. 459, 15 L.Ed.2d 453] (1966); Johnson v. New Jersey, 384 U.S. 719 [, 86 S.Ct. 1772, 16 L.Ed.2d 882] (1966); Stovall v. Denno, 388 U.S. 293 [, 87 S.Ct. 1967, 18 L.Ed.2d 1199] (1967). Rather *Marchetti* and *Grosso* dealt with the kind of conduct that cannot constitutionally be punished in the first instance.' 401 U.S., at 723, 91 S.Ct., at 1045.

"The *Robinson* Court adopted essentially the same view of the Waller decision concerning the Double Jeopardy Clause and multiple prosecutions by different legal subdivisions of a single sovereign. See 409 U.S., at 508, 93 S.Ct., at 878. In this case, too, we are concerned, not with 'the implementation of a procedural rule,' but with an unavoidable constitutional impediment to the prosecution of particular conduct." *Id.* at 700–701, 93 S.Ct. at 2946.

Appellants contend that the instant case presents an analogous situation because the *Greenwell* decision involved a question of jurisdiction. Thus, they conclude that the decision must be given retroactive application. Appellants summarize this position in the following way:

"Likewise, where as here the court lacked jurisdiction or power to proceed, the question of the reliability of

its fact-finding processes does not even arise. Inquiry must stop at the threshold question whether the court had the power to engage in fact-finding processes at all." Brief of Appellants at 24.

This argument has much to recommend it, and, in fact, resulted in a 4–4 split amongst the Justices of the Supreme Court in *Gosa*. However, in this Circuit, the issue is not one of first impression. In McSparran v. Weist, 402 F.2d 867 (1968), cert. denied, 395 U.S. 903, 89 S.Ct. 1739, 23 L.Ed.2d 217 (1969), Judge Freedman, speaking for the Third Circuit sitting *en banc*, held that a decision limiting federal diversity jurisdiction should be given prospective application only. In so holding the court stated the following:

"It is true that we deal here with a jurisdictional question. But the notion that 'jurisdiction' is a subject of some magical quality so that a decision against jurisdiction prevents according recognition to other relevant considerations must yield to the knowledge that it is our construction of the statute which determines in the present case whether jurisdiction exists or is absent." *Id.* at 877.

We feel that this holding effectively precludes us from ignoring the criteria that are normally weighed in determining whether a decision should be given prospective or retroactive effect.

Appellants, however, assert (in effect) that this holding was overruled by the Supreme Court in *Gosa*. They reach this conclusion by adopting the following assessment of the plurality opinion in *Gosa*:

"Mr. Justice Blackmun's plurality opinion, by its efforts to establish that O'Callahan v. Parker, 395 U.S. 258 [, 89 S.Ct. 1683, 23 L.Ed.2d 291] (1969), was not a decision dealing with jurisdiction in its classic form, implicitly acknowledges that if *O'Callahan* were in fact concerned with the adjudicatory power—that is, the jurisdictional competency—of military tribunals, its holding would necessarily be fully ret-

roactive in effect . . .." *Gosa,* 413 U.S. at 693–694, 93 S.Ct. at 2943 (Marshall, J., dissenting) (citation omitted).

■ We cannot accept this interpretation of the plurality opinion. While it did discuss the procedural rights that were effected by the *O'Callahan* decision, it never denied the fact that that decision spoke to a jurisdictional issue. Thus, since there has been no determinative ruling by the Supreme Court on this question, we are bound by *McSparran.* As a result, we must look beyond the jurisdictional nature of *Greenwell* and decide the prospectivity question according to the criteria set out in Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). *See* United States v. Zirpolo, 450 F.2d 424, 432 (3 Cir. 1971).[6]

■ In Stovall v. Denno the Court stated that the criteria guiding a decision on retroactivity are: "(a) the purpose to be served by the new standards; (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards." 388 U.S. at 297, 87 S.Ct. at 1970. However, the most important of these three criteria is the first one. Desist v. United States, 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969). As this court stated in United States v. Zirpolo, *supra,*

"[g]enerally, rulings not primarily designed to enhance the reliability of the fact-finding or truth-determining process have not been applied retroactively." 450 F.2d at 432.

As a result, we begin by focusing on the purpose to be served by the rule announced in *Greenwell,* and asking whether it serves to enhance the reliability of the fact-finding or truth-determining process.

■ In *Greenwell,* the United States Court of Military Appeals was only concerned with the *procedures* used to confer convening authority upon certain commanding officers. Its purpose was never to *bar* these commanders from acquiring the right to convene special courts-martial because of any basic unfairness. Moreover, the *Greenwell* rule did not limit the Secretary's discretionary power in this area in any way; his power to confer convening authority was as great after the decision as it was before it. All that changed was the manner in which he could exercise this discretion.[7]

Thus, the same courts-martial under the same convening authority and with the same trial procedures that took place under the old rule could have also occurred under the new rule announced in *Greenwell.* We conclude therefore that the *Greenwell* decision was only designed to conform the procedure used to confer convening authority to the literal re-

---

6. We note that even if we were not bound by our decision in *McSparran,* we could not simply apply the reasoning of Robinson v. Neil, *supra,* and United States v. United States Coin & Currency, *supra,* to the facts of this case. In each of those cases, the new rule of law being tested for prospective application had the effect of ending the defendants' criminal liability. The rule in *Marchetti* and *Grosso* barred the prosecution of gamblers for failure to register and report illegal gambling proceeds for tax purposes, and the decision in *Waller* barred the prosecution of any defendant by a State when that defendant had already been tried and convicted by a subdivision of that State for the same act.

   In this case, however, the facts are different. The defendants whose convictions would be invalidated under the *Greenwell*

rule are still theoretically liable for their criminal act. The *Greenwell* decision only dealt with which court could try the offense and never suggested that the offense could not be tried at all. Thus, the decisions in Robinson v. Neil, *supra,* and United States v. United States Coin & Currency, *supra,* appear to be distinguishable.

7. Under the old procedure the Secretary simply granted convening authority to all commands that were designated "separate or detached" by a general or flag officer in command. Under the new procedure the general officer must go through the added step of submitting the name of the commander of the separate or detached command to the Secretary for official approval.

quirements of the statute and that it was not intended to improve the fact-finding procedures employed at the court-martial itself.[7a] As a result, the purpose of the new standard announced in *Greenwell* cuts in favor of prospectivity.[8]

When we turn to the other two criteria listed in Stovall v. Denno, *supra,* our belief that *Greenwell* should be given prospective effect only is further reenforced. There can be little doubt that there was significant reliance by the "law enforcement authorities" upon the pre-*Greenwell* interpretation of Article 23(a)(7). That interpretation provided one of the statutory bases for the promulgation of section 0103b(5), JAG Manual,[9] and was that section's sole statutory basis from 1966 to 1970.

**7a.** The dissent misreads our discussion on the purpose of *Greenwell* as a suggestion that "the defect corrected in *Greenwell* . . . is too 'technical' to constitute a jurisdictional error." (Dissenting opinion p. 643, n. 4). It is clear that *Greenwell* dealt with a jurisdictional issue (*supra* p. 624).

In determining that an improperly convened military court is without jurisdiction, *Greenwell*'s purpose was to conform the procedure used in conferring convening authority to the requirements of the statute. Our discussion of the purpose to be served by the new rule in *Greenwell* deals with the first requirement of *Stovall*. It does not imply that *Greenwell* dealt with non-jurisdictional, "technical" errors.

**8.** We are aware that it might be argued that the Article 23(a)(7) statutory requirements are themselves designed to enhance the reliability of the truth-determining process and that the court was implementing this Congressional intent in *Greenwell*. If this is true, then the purpose of the new rule would be to enhance the truth-determining process in the ways that concerned Congress when it passed Article 23(a)(7).

Appellants, in essence, make this argument when they contend that the purpose of Article 23(a)(7) was to prevent the Secretary from losing control of his power to confer convening authority. They suggest that this loss of control was considered detrimental because it would result in a conferral of convening authority on the smallest units in the chain of command and that this would undermine the court-martial process in the following ways: 1) it would deprive the accused of the exercise of prosecutorial discretion by a mature and detached commander; 2) it would increase the risk of command influence; and 3) it would undercut the principle of civilian control of the military.

We do not find this argument persuasive for several reasons. First, we are not referred to any legislative history that suggests that Congress passed Article 23(a)(7) for the reasons outlined by the appellants (nor have we been able to find any ourselves). It might be true that the purpose of Article 23(a)(7) was to prevent the conferral of convening authority upon small units and it might also be true that this was feared for the reasons suggested by the plaintiffs. However, we are cited to nothing that establishes these as facts.

Second, even if we accept plaintiffs' speculation on the purposes for Article 23(a)(7), we note that a procedure that provides civilian checks on the military, and seeks to control prosecutorial discretion is not designed to increase the reliability of the truth-determining process. We feel this is self-evident with the former objective. With regard to the latter, we observe that the decision to prosecute only decides who is subject to the truth-determining procedures and in no way affects those procedures themselves.

As a result, plaintiffs' theory of the purposes behind Article 23(a)(7) cannot promote their position on retroactivity unless they are correct in suggesting that Congress wanted to keep convening authority from the smallest units because in these units the possibility of command influence was greatest. However, this hypothesis is undercut by the plaintiffs' own suggestion that there are two other plausible purposes that might underly this legislative goal. Further, it is also undercut by the language of Article 23(a)(7) itself since that section does not bar the conferral of convening authority upon small units but instead only requires specific designation by the Secretary. In our view, if Congress was truly motivated by the desire to eliminate the increased "command influence" that is presumably inherent in the exercise of convening authority by the commanders of small units, they would have simply barred its exercise by commanders below a certain level. This was not done by Article 23(a)(7). In fact, that section actually facilitated the exercise of convening authority by these commanders by making that authority available to *all* commanders at the discretion of the Secretary.

In view of all of these considerations, we cannot accept this argument.

**9.** The United States Court of Military Appeals ruled in *Ortiz, supra,* that the Secretary of the Navy had been unsuccessful in his attempt to invoke Article 23(a)(7) as a statutory basis for section 0103b(5), JAG Manual. However, this

In addition, we feel that the retroactive application of the *Greenwell* rule would have clear adverse effects upon the administration of justice. The defendants convicted by courts-martial convened by commanders who received their authority under the rule invalidated in *Greenwell* fall into two categories. The first category includes those defendants who are no longer in the service and those who remain in the service but who committed an offense upon which the statute of limitations has run. Since none of these defendants can be retried, invalidation of their pre-*Greenwell* convictions would have an obvious negative effect on the administration of justice. *See* United States v. Zirpolo, *supra*, 450 F.2d at 433.

The second category includes all defendants that can be retried. For this group the more common effects on the administration of justice would come into play and would be accentuated by the military context that surrounds each of the offenses charged. As the appellee notes:

"The evidence would now be stale and witnesses unavailable in many cases, and the burden of conducting retrials, requiring substantial dislocation of Navy and Marine Corps personnel from their regular duties, would create 'serious, adverse effects' on the military justice system and the service generally. . . ." Brief of Appellee at 55.

Thus, when the Stovall v. Denno criteria are considered the conclusion we reach is that *Greenwell* should only be given prospective effect. We therefore will affirm the district court's order granting summary judgment to the defendants.

ruling in no way negates the fact that the Secretary relied, in part, on that Article when he first promulgated section 0103b(5), JAG Manual.

10. We note that the definition of the class remains relevant since this action will only be

## III.

■ Before we end our opinion, we must finally deal with two issues raised by appellants concerning the district court's final definition of the plaintiff class.[10] Their first claim is that the court erred in limiting the class to persons tried under section 0103b(5), JAG Manual between October 29, 1965 and May 28, 1970.

■ As we understand the district court, its intent in so limiting the class was to restrict it to those individuals who were convicted by courts-martial convened by commanders given convening authority under 0103b(5) when that section was, in fact, conferring this authority pursuant to Article 23(a)(7), UCMJ. We feel that such an order was within the discretion of the district court, *see* Katz v. Carte Blanche Corp., 496 F.2d 747, 757 (3d Cir. 1974), and should be affirmed.

However, we note that this class probably does not include all persons tried by special courts-martial convened pursuant to section 0103b(5), JAG Manual, from October 29, 1965—i. e., from the date of the decision of the United States Court of Military Appeals in United States v. Ortiz, *supra*. It is true that it was as a direct result of the *Ortiz* decision that section 0103b(5), JAG Manual, was amended so that it effectively conferred convening authority pursuant to Article 23(a)(7). Nonetheless, we assume that there was some time lag between the *Ortiz* decision and the effective date of the amendment to section 0103b(5), JAG Manual, that was made in response to it. Thus, we will remand the case to the district court so that its order defining the class can be altered to reflect what appears to be its true intent.

The appellants' second class action claim is that the district court erred

res judicata with regard to those individuals who are class members. We also note that appellees raise their own claims regarding the propriety of the class. However, since they never filed an appeal, these questions are not properly before us.

when it refused to permit class treatment of their back pay claims under the Tucker Act. We have reviewed the district court's reasoning on this point and have doubts as to whether its decision on the question was correct. *See* opinion of the district court, 365 F.Supp. 328, 337 (1973).

However, the effect of its decision was only to narrow the remedies available to the plaintiff class, if victorious. It did not result in any relevant narrowing of the underlying cause of action. As a result, since the plaintiff is not victorious under our decision in any event, our review of this issue would serve no useful purpose. Accordingly, we reach no final judgment on the validity of the district court's decision on this matter.

The case will be remanded so that the district court can reconsider its order defining the plaintiff class. In all other respects, the judgment of the district court will be affirmed.

ADAMS, Circuit Judge (concurring):

While I concur in the judgment of the Court, I reach such result by a different path than that trod by the majority. Thus it would appear appropriate to set forth my own views dealing with the resolution of the thorny issue now before us.

Plaintiffs here seek to have the holding of the United States Court of Military Appeals in United States v. Greenwell, 19 U.S.C.M.A. 460 (1970), made broadly retroactive. They urge that all courts-martial conducted under the procedure disapproved in *Greenwell* be declared void *ab initio,* that all records resulting from those courts-martial be expunged, and that all back pay and other forfeitures flowing from sentences under those proceedings be ordered paid to the servicemen involved. This result follows

inexorably, it is contended, because of the failure of the procedure, here dictated by the regulations, to conform to the statute creating special court-martial jurisdiction.

Certain salient facts are undisputed: The commander of any detached command may convene a special court-martial. Uniform Code of Military Justice, 10 U.S.C. § 823(a) (1959). The Secretary of the Navy has the power to designate commands as separate and detached for the purpose of establishing special court-martial jurisdiction. United States v. Greenwell, *supra*; United States v. Ortiz, 15 U.S.C.M.A. 505 (1965). Further, such designations may be made by the Secretary en bloc.

The Court of Military Appeals found that in promulgating section 0103b(5) of the JAG Manual,[1] the Secretary believed that he acted in an authorized fashion pursuant to the statutory mandate. Yet the Court held that, whatever the good intentions of the Secretary, the effect of section 0103b(5) was an improper delegation to certain commanders of the power to designate separate and detached commands for disciplinary purposes. *Greenwell,* 19 U.S.C.M.A. at 463.

In essence, then, the invalidity of courts-martial convened pursuant to section 0103b(5) lies in the administrative failure of the Secretary of the Navy *personally* to identify commands as "separate and detached," so that such commands, in turn, would be enabled to convene courts-martial.

Plaintiffs urge that, for want of this personal designation by the Secretary, verdicts rendered by all special courts-martial not so designated are required to be overturned for all purposes for want of jurisdiction from the outset. I am unable to subscribe to such a mechanical

---

1. Manual of the Judge Advocate General of the Navy § 0103b(5).

   "*Special courts-martial.*—In addition to those officers otherwise authorized by article 23(a)(1) through (6) [of the Code], the following officers are, under the authority granted to the Secretary of the Navy by article 23(a)(7) [of the Code], empowered to convene special courts-martial:

   All commanding officers and officers in charge of commands now or hereafter designated as separate or detached commands by a flag or general officer in command. . . ."

view of the law, which would require that a collateral attack result in the retroactive application of a technical notion of jurisdiction. Such an automatic and unreasoned result would seem improper without inquiry into the nature of the collateral attack, and without an analysis of the underlying court-martial proceedings and the competing policy considerations that should be weighed in the adjudicative process.

The situation we are asked to pass on here is somewhat anomalous. While criminal convictions lie at the root of the matter, no further incarceration is imposed,[2] and the plaintiffs are seeking solely monetary and administrative relief. We are not confronted with the traditional collateral assault on a criminal conviction, that is, a habeas petition. Thus, the case presents an admixture of attributes of the civil field where repose is paramount and the criminal field where, although the era of absolute retroactivity is passed, current doctrines view favorably the possibility of retroactive application of new rules.

While it is unlikely that plaintiffs are entitled to rely on the relaxed finality rules of habeas,[3] the nature of their suit also renders it less amenable to successful collateral attack than when practices presently found unconstitutional are responsible for an individual's continued confinement. Less weighty policies favor retroactivity where, as here, the brute fact of incarceration is absent,

judgments are final, and constitutional issues are not present.

I conclude that, viewed either as a collateral attack on a civil judgment or from the vantage of a habeas proceeding, plaintiffs cannot prevail. From the perspective of civil litigation, relief is foreclosed by principles of res judicata or collateral estoppel. But even assuming arguendo that this case is controlled by habeas corpus retroactivity doctrines, it would appear, first, that a finding of retroactivity is not required by precedent, but that a balancing process must be employed to reach a reasoned result; and, second, under such process, and in the context here presented, a broad retroactive application of *Greenwell* would not comport with the precedents and philosophy underlying the retroactivity doctrine.

Accordingly, it is appropriate to deal with the rules applicable to collateral attack, first in the civil field and then in the criminal field.

*I. Civil, or Non-Habeas Corpus, Model of Collateral Attack on a Final Judgment*

Were the plaintiffs considered subject to applicable—non-habeas—rules of res judicata, their collateral attack could not succeed, despite the allegation of defective jurisdiction in the first tribunal.[4]

---

**2.** Maximum confinement sentences by special courts-martial are six months. 10 U.S.C. § 819 (1959), as amended, 10 U.S.C. § 819 (Supp.1974). Since the *Greenwell* decision in 1970, convictions under the procedure declared defective there have been routinely reversed. *See, e. g.,* United States v. Cunningham, 21 U.S.C.M.A. 144 (1971).

**3.** In a companion case to Gosa v. Mayden, 413 U.S. 665, 93 S.Ct. 2926, 37 L.Ed.2d 873 (1973), Flemings, a released petitioner suing for correction of records, was treated no differently from Gosa, who brought a habeas action. Although the Supreme Court did not

distinguish between the circumstances of the collateral proceedings, such a distinction would not be precluded, for the cases of Gosa and Fleming were otherwise distinguishable. See *infra* Part II 1(b), page 203.

**4.** Gelpcke v. City of Dubuque, 68 U.S. (1 Wall.) 175, 17 L.Ed. 520 (1863). In *Gelpcke*, petitioners unsuccessfully challenged the force and effect of an earlier final decree regarding the status of bonds issued under a statute later held by the Iowa Supreme Court to be unconstitutional. *See also*, Great Northern Ry. Co. v. Sunburst Oil & Refining Co., 287 U.S. 358, 53 S.Ct. 145, 77 L.Ed. 360 (1932).

**630**

Admittedly, proper jurisdiction is generally considered a fundament, and want of jurisdiction may be raised at any time during trial or during the appellate process.[5] Based on this accepted doctrine, plaintiffs contend that even a final judgment rendered pursuant to an assertion of jurisdiction later shown to be vulnerable is void as though never rendered.

Taken alone, policies dictating vigilance to the proper exercise of jurisdictional authority might suggest such a

result. But once a judgment has become final, such policies collide with the well-respected and forceful precepts favoring repose and ultimate finality to litigation.[6] Consequently, in civil litigation[7] want of jurisdiction—while a potential issue in any non-final case—is generally not a ground for collateral attack.[8] "One trial of an issue is enough. 'The principles of *res judicata* apply to questions of jurisdiction as well as to other issues.' "[9]

---

5. American Fire & Casualty Co. v. Finn, 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702 (1951); Mansfield, Coldwater & Lake Michigan Ry. Co. v. Swan, 111 U.S. 379, 4 S.Ct. 510, 28 L.Ed. 462 (1884); 1 J. Moore, Federal Practice ¶ 0.60[4] at 641 (1974). However, jurisdiction is a coat of many colors. Justice Douglas in United States v. Augenblick, 393 U.S. 348, 89 S.Ct. 528, 21 L.Ed.2d 537 (1969), suggests that the concept of jurisdiction is malleable, and he notes that upon occasion it has been redefined. *See also*, O'Callahan v. Parker, 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969).

Among the elements comprising the flexible jurisdictional fabric, it would appear that some components are not indispensable. For example, not every failure of jurisdiction requires a court to stay its hand, even in the case before it. In McSparran v. Weist, 402 F.2d 867 (3d Cir. 1968), access to the federal court was circumscribed by tightening the diversity requirements. Nonetheless, the more generous older rule was applied, on equitable grounds, to the case before the court. This is similar to the jurisdictional holding in Chevron Oil Co. v. Huson, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), where a shorter statute of limitations period was applied only prospectively. *See also*, Cipriano v. City of Houma, 395 U.S. 701, 89 S.Ct. 1897, 23 L.Ed.2d 647 (1969).

Nor is every order based on an unsustained assertion of jurisdiction void and unenforceable. In United States v. United Mine Workers of America, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1947), the Court stated at pages 289–295, 67 S.Ct. 677 that even where a district court had no jurisdiction over the subject matter because of the Norris-LaGuardia Act, under certain circumstances an injunction might issue pending a determination of the jurisdictional question, and noncompliance with the injunction would appropriately be punished as contempt of court.

6. In *Gelpcke, supra* note 4, in holding city bonds enforceable despite the later invalida-

tion of the authorizing statute by the state's highest court, the Supreme Court relied on the interest in having questions "settled," and on the interim reliance by all parties on the legitimacy of the bond issue.

7. The same rule has been applied in the criminal area. For example, in Warring v. Colpoys, Circuit Judge, later Chief Justice, Vinson declined to issue a writ of habeas corpus, asserting, "It is increasingly evident that 'jurisdiction' in the normal case is not subject to collateral attack. While habeas corpus is regarded more liberally than most forms of collateral attack, it is not to be used as an appeal or a writ of error." 74 U.S.App.D.C. 303, 122 F.2d 642, 644, cert. denied, 314 U.S. 678, 62 S.Ct. 184, 86 L.Ed. 543 (1941) (citations omitted).

The increased liberality accorded the scope of habeas in *Warring* was attributed to the question of personal liberty involved there, an issue not present in the case before the Court here. *See supra.*

8. Thus it has not been suggested that all judgments of three-judge courts would be overturned if it were ascertained, after such judgments were final, that, while the statute required the chief judge of the circuit personally to designate the additional judges required for each three-judge court, in fact for years the assignments had been made by the clerk of the court. 28 U.S.C. § 2284(1) (1965). Rather, it would seem that the interest in ending litigation would prevail, and a failure of jurisdiction in such circumstances would not vitiate judgments previously rendered under a presumption of properly founded jurisdiction.

9. Treinies v. Sunshine Mining Co., 308 U.S. 66, 78, 60 S.Ct. 44, 51, 84 L.Ed. 85 (1939), *quoting* American Surety Co. v. Baldwin, 287 U.S. 156, 166, 53 S.Ct. 98, 77 L.Ed. 231 (1932) (footnote omitted). *See also* Chicot County Drainage Dist. v. Baxter State Bank, 308 U.S. 371, 60 S.Ct. 377, 84 L.Ed. 329 (1940); Stoll v. Gottlieb, 305 U.S. 165, 59 S.Ct. 134, 83

Chicot County Drainage District v. Baxter State Bank [10] illustrates this. Baxter held bonds of the Drainage District, which had undergone reorganization in federal court in March, 1936. The district court exercised jurisdiction over the reorganization under a federal statute purporting to establish authority in the district courts to readjust the debts of financially-distressed subdivisions of a state. In May, 1936, in Ashton v. Cameron County Water Improvement Dist. No. One, the United States Supreme Court struck down as violative of the Constitution the statute that purported to give jurisdiction (298 U.S. 513, 56 S.Ct. 892, 80 L.Ed. 1309). Subsequently, Baxter sued on bonds it had received prior to the reorganization. When the Drainage District interposed a plea of res judicata, Baxter asserted that the judgment of the district court was void because it had no lawful jurisdictional basis. The Supreme Court rejected this contention, stating:

> The actual existence of a statute, prior to such a determination [of invalidity], is an operative fact and may have consequences which cannot justly be ignored. The past cannot always be erased by a new judicial declaration. * * * Questions of rights claimed to have become vested, of status, of prior determinations deemed to have finality and acted upon accordingly, of public policy in the light of the nature both of the statute and of its previous application, demand examination. 308 U.S. at 374, 60 S.Ct. at 319.

The validity of the statute might have been raised by the parties in the original debt readjustment suit, but it was not.

Thus, the Court held that principles of res judicata concluded issues that could have been asserted as well as those actually litigated.

According to the Supreme Court, no exception to res judicata was warranted in Chicot County, notwithstanding a later finding that the district court's exercise of jurisdiction was based on an unconstitutional statute. Despite the jurisdictional defect, the "parties [had been] brought before [the court] in accordance with the requirements of due process * * *." 308 U.S. at 376, 60 S.Ct. at 319.

The jurisdictional defect here is less far-reaching than that asserted in Chicot County.[11] In the various courts-martial attacked in this suit, the flaw lay in the regulation which exceeded the statutory grant of authority, whereas in Chicot County the statute conferring power on the district courts fell as beyond the constitutional power of Congress to enact.

Under Chicot County the crucial element that would bar collateral attack on a judgment seems to be whether the party was afforded an opportunity to litigate.[12] Application of the Chicot County rule would preclude a collateral attack here, for it is not suggested that plaintiffs were unable to raise their jurisdictional objection at their courts-martial.[13]

If plaintiffs are considered on the same footing as those who attack a civil judgment collaterally, in the circumstances here there is no persuasive authority to support voiding the original judgments. Under the view that only habeas actions are relieved of the finality burden, res judicata mandates the

L.Ed. 104 (1938); McCormick v. Sullivant, 23 U.S. (10 Wheat.) 192, 6 L.Ed. 300 (1825); J. Moore, Federal Practice ¶¶ 0.60[5], 55.09 (1974).

10. 308 U.S. 371, 60 S.Ct. 317, 84 L.Ed. 329 (1940).

11. See also Gelpcke v. City of Dubuque, 68 U.S. (1 Wall.) 175, 17 L.Ed. 520 (1863), notes 4 and 6, supra.

12. See Durfee v. Duke, 375 U.S. 106, 114 n. 12, 84 S.Ct. 242, 11 L.Ed.2d 186, citing Re-

statement, Conflict of Laws, § 451(2) (Supp. 1948); Restatement, Judgments, § 10 (1942).

13. A small class of cases creates a narrow exception to the "opportunity to litigate" rule, but no considerations are present in this case which would justify a result different from that of Chicot County. The exceptional cases have involved adjudications of federal issues in state courts. See Kalb v. Feuerstein, 308 U.S. 433, 60 S.Ct. 343, 84 L.Ed. 370 (1940); United States v. United States Fidelity Co., 309 U.S. 506, 60 S.Ct. 653, 84 L.Ed. 894 (1940).

outcome; there is no basis for this Court to consider altering the effects of the allegedly invalid exercise of special court-martial jurisdiction.[14]

## II. The Habeas Corpus Model of Collateral Attack

The judgments here attacked are criminal convictions; therefore plaintiffs may argue that, although they are not in prison, this collateral proceeding has at stake certain aspects comparable to those determined in a habeas petition.[15] In habeas cases, considerations of finality are not dispositive, and if circumstances warrant relief then such relief is granted. Assuming for the purposes of argument that an analysis consonant with habeas corpus doctrine would be more appropriate than one comporting with civil litigation, the question we now address is whether the *Greenwell* decision should be applied fully retroactively to the plaintiffs.

### 1. Factors Advanced in Support of Requiring Retroactivity.

In criminal proceedings collateral relief has traditionally been available through habeas corpus,[16] a proceeding in which the law disavows the same type of interest in finality that characterizes the civil process. However, although post-conviction relief was afforded for wrong-ful incarceration, this has not meant that every new interpretation of law is retroactively applied to overturn convictions procured under an earlier questionable procedure or standard of law.[17]

Plaintiffs contend that, even though the issue of retroactivity is generally determined by a process of deliberation or balancing, three circumstances present here would in any event require full retroactivity. According to plaintiffs, these three considerations are: (a) that no defect in jurisdiction may be regarded as merely statutory, but must necessarily be cast as a due process question, and thus a holding of non-retroactivity is impermissible; (b) that any decision rendering a military conviction a nullity must perforce be fully retroactive because of the narrowly drawn jurisdiction of the military; and (c) that a decision either is retroactive or is not, and the holding in United States v. Ferry, 22 USCMA 339 (1973), that pre-*Greenwell* convictions may not be used to enhance punishment in a subsequent court-martial, must either be overruled or extended comprehensively to encompass full retroactivity.

Each of these arguments, if successful, would cut short further analysis and would, by the force of its own logic, require a holding that *Greenwell* is necessarily fully retroactive. Thus, it is es-

---

**14.** For situations where prospective-only application has been ordered for jurisdictional rulings in the civil field, *see* Chevron Oil Co. v. Huson, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971) (statute of limitations); McSparran v. Weist, 402 F.2d 867 (3d Cir. 1968) (diversity jurisdiction).

**15.** Plaintiffs' records carry a criminal conviction. Also, plaintiffs have forfeited wages, liberty, honorable discharges and veterans' benefits. For a discussion of the "collateral consequences" of criminal convictions, *see* Carafas v. LaVallee, 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968).

**16.** Access to habeas corpus relief in the federal courts is codified at 28 U.S.C. §§ 2241 et seq. Habeas corpus under 28 U.S.C. § 2255 is not available to plaintiffs because of the statutory requirement that a petitioner be "in custody" at least at the time a habeas peti-tion is filed. *E. g.*, Gosa v. Mayden, 413 U.S. 665, n. 3, at 670, 93 S.Ct. 2926, 37 L.Ed.2d 873 (1973); Carafas v. LaVallee, 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968). *See also* Hensley v. Municipal Court, 411 U.S. 345, 93 S.Ct. 1571, 36 L.Ed.2d 294 (1973).

**17.** Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965). The traditional Blackstonian view—also referred to as the declaratory theory—had been that constitutional rulings and interpretations by courts were wholly retroactive. The underlying rationale for the Blackstonian view of absolute retroactivity has been explored in a thoughtful article by Professor Mishkin in which he relates retroactive application of the law to the symbolic role of courts. Mishkin, The Supreme Court 1964 Term, Foreword: The High Court, The Great Writ, and the Due Process of Time and Law, 79 Harv.L.Rev. 56 (1965).

sential that we treat each contention separately.

### (a) Jurisdictional Defect

Collateral attacks on jurisdictional failures in criminal cases have been adjudicated only infrequently. Although the general rule in the civil area is that res judicata and interest in repose foreclose collateral attack on a final judgment even where jurisdictional deficiencies are alleged,[18] in the criminal field, the value of repose occupies a lower niche in the legal order. The traditional rule has been that a writ of habeas will be granted for the release of a prisoner jailed pursuant to an improper exercise of jurisdiction. Ex Parte Siebold, 100 U.S. 371, 25 L.Ed. 717 (1879). Yet access to the federal courts for a writ of habeas has no implications for the question whether a claimed jurisdictional defect at trial is to be applied in a broad retroactive manner. The rationale for permitting collateral attack differs from that governing retroactive application of law. As the Supreme Court has stated: "The availability of post-conviction relief serves significantly to secure the integrity of proceedings at or before trial and on appeal. No such service is performed by extending rights retroactively." [19]

The advisability of retroactive application of the jurisdictional Greenwell ruling must thus be weighed. Although strong precedent exists for declaring nonretroactive an interpretation of criminal law that narrows a court's jurisdiction, prior case law is not conclusive.[20] Yet the case-by-case approach taken by the Supreme Court on questions of retroactivity where constitutional violations are at stake, together with the approaches taken by circuit courts, are persuasive that automatic retroactivity is not mandated by the jurisdictional nature of the Greenwell defect.

The question of the retroactive application of a narrowing jurisdictional interpretation of the criminal contempt statute was raised in Warring v. Colpoys.[21] Warring had been convicted under a construction of the statute that conferred power to punish for contumacious acts in the court or "so near thereto as to obstruct the administration of justice." After Warring's conviction was final, but while he was still incarcerated, the Supreme Court reinterpreted the statutory language to be geographically limiting. It was undisputed that Warring's acts were not criminal under the new statutory interpretation. Warring brought a habeas petition alleging that he was tried by a court wanting in jurisdiction, claiming that "the statute never gave the court contempt 'jurisdiction' over his type of offense." [22] Circuit Judge, later Chief Justice, Vinson, rejected this contention, holding that retroactive application of a new statutory construction was not warranted despite the narrower jurisdiction that resulted.[23]

---

**18.** See Part I supra. Chicot County Drainage District v. Baxter State Bank, 308 U.S. 371, 60 S.Ct. 317, 84 L.Ed. 329 (1940).

**19.** Kaufman v. United States, 394 U.S. 217, 229, 89 S.Ct. 1068, 1075, 22 L.Ed.2d 227 (1969).

**20.** Gosa v. Mayden, 413 U.S. 665, 93 S.Ct. 2926, 37 L.Ed.2d 873 (1973), discussed in part 2(b), infra, rules that O'Callahan v. Parker, 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969), should not be retroactively applied. O'Callahan had been viewed by many as a decision going to the core of the military courts' jurisdictional power. So viewed, the determination by the Supreme Court to apply O'Callahan prospectively only would appear compelling here. The judgment of the Court eschews a "jurisdictional" characterization of O'Callahan, however.

**21.** 74 U.S.App.D.C. 303, 122 F.2d 642, cert. denied, 314 U.S. 678, 62 S.Ct. 184, 86 L.Ed. 543 (1941).

**22.** 122 F.2d at 646.

**23.** The Fifth and Tenth Circuits have also spoken on whether retroactive application is necessary where holdings concern jurisdiction. Schlomann v. Moseley, 457 F.2d 1223 (10th Cir. 1972), cert. denied, 413 U.S. 919, 93 S.Ct. 3061, 37 L.Ed.2d 1041 (1973); Gosa v. Mayden, 450 F.2d 753 (5th Cir. 1971), aff'd, 413 U.S. 665, 93 S.Ct. 2926, 37 L.Ed.2d 873 (1973). In Schlomann, having squarely decided that O'Callahan v. Parker, 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969), set clear jurisdictional bounds on the military courts, the court nevertheless concluded, "We are not persuaded that the jurisdictional terminology of O'Callahan compels us to refuse con-

Although a civil action, McSparran v. Weist provides another example of a prospective-only jurisdictional decision. McSparran restricted the basis for diversity jurisdiction by holding that "manufactured"[24] diversity could not confer federal jurisdiction. 402 F.2d 867 (3d Cir. 1968). The Court, sitting en banc, made the operation of the rule prospective-only, to be applied solely to causes of action arising after the date of the decision. Cases in which the plaintiff was an out-of-state fiduciary thus continued to be adjudicated, although no proper jurisdictional foundation was presented.[25] The Court stated, in language pertinent to the present case, "[T]he notion that 'jurisdiction' is a subject of some magical quality . . . must yield to the knowledge that it is our construction of the statute which determines . . . whether jurisdiction exists or is absent." 402 F.2d at 877.

Apparently, the possibility of applying the McSparran holding retroactively to upset judgments that were then final was not even considered. Although such final judgments rested on flawed federal jurisdiction, they stood unchallenged.[26]

While want of jurisdiction is an elemental ground for the grant of habeas relief, the existence of a jurisdictional

defect of limited proportions does not, as plaintiffs would have it, constrain this Court to find that the defect applies retroactively. To the contrary, courts have used the same weighing process to determine retroactive application of new rules where jurisdictional questions arose as in other situations, constitutional or statutory, where a claim of retroactivity was presented.

### (b) Military Jurisdiction

Plaintiffs point out that the Supreme Court has reiterated the proposition that military jurisdiction is limited to that provided by statute and limited to that permitted by the Constitution. The Court has expressed the standard for the proper exercise of jurisdiction by military tribunals as "the narrowest jurisdiction deemed absolutely essential to maintaining discipline among troops in active service."[27]

Based on this, plaintiffs argue that the failure to follow a statute's precise prescription makes a military judgment vulnerable. As to an initial challenge to a questionable practice, admittedly no fair reading of the Supreme Court cases could support a different result. Runkle v. United States[28] and McClaughry v. Deming[29] made clear that court-martial juris-

---

sideration of prospective application." 457 F.2d at 1227.

In Gosa, while conceding that O'Callahan limited the power of the judicial forum, the Fifth Circuit denied O'Callahan retroactive application, holding "there is no arbitrary or simplistic basis for deciding retroactivity. The heart of the doctrine is a reasoned application of new constitutional precedent." 450 F.2d at 759 (footnote deleted).

24. Appointment of an out-of-state guardian or executor for purposes of suit.

25. See, e. g., Groh v. Brooks, 421 F.2d 589 (3d Cir. 1970); Law v. Converse, 419 F.2d 38 (3d Cir. 1969). Chevron Oil Co. v. Huson, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), is yet another case where a new jurisdictional rule, involving a statute of limitations, was applied prospectively only, because of reliance by the plaintiff there on an older, more liberal rule.

26. Our research has not disclosed that any case was ever instituted to attack, collaterally, judgments predicated on jurisdiction that McSparran later held was nonexistent.

27. Toth v. Quarles, 350 U.S. 11, 22, 76 S.Ct. 1, 8, 100 L.Ed. 8 (1955). The courts-martial at issue in this case concededly fall within the Toth definition of the proper scope of military disciplinary proceedings. See also, O'Callahan v. Parker, 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969); Reid v. Covert, 354 U.S. 1, 77 S.Ct. 1222, 1 L.Ed.2d 1148 (1957); McClaughry v. Deming, 186 U.S. 49, 22 S.Ct. 786, 46 L.Ed. 1049 (1902); Runkle v. United States, 122 U.S. 543, 7 S.Ct. 1141, 30 L.Ed. 1167 (1887).

28. 122 U.S. 543, 7 S.Ct. 1141, 30 L.Ed. 1167 (1887). In Runkle the petitioner successfully challenged his discharge from the army because, in contravention of the statute, the President had failed to affix his approval to the court-martial proceedings.

29. 186 U.S. 49, 22 S.Ct. 786, 46 L.Ed. 1049 (1902). In Deming, despite an express statutory prohibition, a volunteer officer in the army was tried by a court-martial comprised of officers in the regular army. The Supreme Court held, therefore, that the court-martial was without proper jurisdiction and a writ of habeas corpus lay.

diction must be exercised in strict conformity with statutes, and therefore are strong support for the holding in *Greenwell*. However, extension of *Runkle* and *Deming* to the question whether retroactive operation is mandated is far from clear. In the cited cases the retroactivity issue was never raised. Hence, broad language in them regarding jurisdiction must not be read cavalierly as applying to a claim for full retroactive effect in a situation such as presently before us.

Military courts are not unique in having their jurisdiction curtailed to fit the contours of statutes and the Constitution. The jurisdictional reach of other courts in other areas is also narrowly circumscribed. In *Chicot County, supra,* for example, the scope of bankruptcy jurisdiction of the federal courts was at issue. Responding to the assertion that a prior judgment of the district court was void because dependent on an improper exercise of jurisdiction under the statute, the Supreme Court stated:

> We think the argument untenable. The lower federal courts are all courts of limited jurisdiction, that is, with only the jurisdiction which Congress has prescribed. But nonetheless they are courts with authority  *  *  *. Their determination of [questions of jurisdiction and statutory interpretation], while open to direct review, may not be assailed collaterally. 308 U.S. at 376, 60 S.Ct. at 319.

The distinctive flavor of judicial opinions narrowing military jurisdiction proceeds from an awareness of the underlying constitutional privileges of which a citizen is deprived before a military tribunal, *e. g.,* indictment by grand jury, trial by petit jury, more vigorous interpretation of the confrontation clause.[30] Because of the loss of these valuable rights, stalwart judicial efforts have, in effect, protected citizens from undue exposure to the military forum. And the applicable decisions frequently have been cast in terms of jurisdictional limitations on courts-martial.

However, the appellants in their courts-martial were not denied any constitutional protections to which they were entitled. It is not suggested that holding *Greenwell* retroactive would permit a fairer trial in a differently constituted tribunal or, indeed, a trial different in any regard. Thus, those policies which might dictate a jurisdictional spear thrusting back to open final cases would not appear to have persuasive power in this case. Whatever new trials might occur if retroactivity were mandated would merely replicate procedures undergone once before.

Even where important constitutional considerations are present, retroactivity is not foreordained where a ruling limits the scope of military jurisdiction. In the recent case of Gosa v. Mayden, 413 U.S. 665, 93 S.Ct. 2926, 37 L.Ed.2d 873 (1973), the retroactivity of O'Callahan v. Parker, 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969), was at issue. *O'Callahan* had held that military jurisdiction did not encompass the power to try servicemen in peacetime for non-service related offenses. Gosa was in custody after a court-martial and sought habeas relief. A petitioner in a companion case, Flemings, had already been released and was seeking correction of his military records. Arguing that their constitutional rights under the Fifth and Sixth Amendments had been curtailed by their military trials, the petitioners in *Gosa* contended that the *O'Callahan* rule should be retroactive.

Despite the fact that the Supreme Court had held in *O'Callahan* that trials by military courts of non-service related offenses in peacetime were invalid because such trials were beyond the constitutional limits of military jurisdiction, a sharply divided court in *Gosa* refused to grant relief.[31] Justice Blackmun, writ-

---

**30.** O'Callahan v. Parker, 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969).

**31.** On the issue of retroactivity, four justices concluded that *O'Callahan* did not require ret-

roactive application; four indicated that retroactivity was called for, although only two of these justices found it necessary to reach the question; and one justice (Douglas, J.) concluded that res judicata required that Gosa's

ing for himself, Chief Justice Burger, and Justices Powell and White stated, in language that supports the majority's position here, that in *O'Callahan:*

[T]he Court certainly did not hold, or even intimate, that the prosecution in a military court of a member of the armed services for a nonservice-connected crime was so unfair as to be void *ab initio.* 413 U.S. at 675, 93 S.Ct. at 2933.

Justice Blackmun then used the *Linkletter-Stovall* approach, and held that, on balance, retroactivity was not warranted. In his analysis, Justice Blackmun looked to the likelihood of unfairness in result and concluded that:

[T]he validity of convictions by military tribunals, now said to have exercised jurisdiction inappropriately over non service-connected offenses is not sufficiently in doubt so as to require the reversal of all such convictions rendered since 1916 when Congress provided for [such trials].[32]

Justice Marshall wrote in dissent that *O'Callahan* presented a forceful case for retroactive application, because it

[Dealt] with the constitutional limits of the military's adjudicatory power over offenses committed by servicemen. No decision could more plainly involve the limits of a tribunal's power to exercise jurisdiction over particular offenses and thus more clearly demand retroactive application.[33]

While the precise application of *Gosa* to our case is uncertain, the result of

*Gosa* is manifest. Based on considerations either of non-retroactivity or res judicata, a majority of the Supreme Court held that Gosa would remain in prison despite the constitutional shortcomings of his court-martial. The circumstances of the present case appear to lead, in effect, to the same conclusion. Indeed, unlike *Gosa,* plaintiffs here have no grievances of constitutional dimension, and they are not presently imprisoned. It would thus appear that even the Justices who believed that *O'Callahan* warranted retroactive application might conclude differently in the present case, where "the constitutional limits of the military's adjudicatory power" are not at issue. 413 U.S. at 694, 93 S.Ct. at 2943.

The only consideration advanced to support an outcome here different from that in *Gosa* is that the flaw in the procedure followed prior to *Greenwell* lay in the area of "jurisdiction in its classic form." 413 U.S. at 693, 93 S.Ct. 2926. Yet, the invocation of jurisdictional deficiency does not end the matter. At least two courts of appeals had considered the retroactivity of *O'Callahan* prior to *Gosa.* Each concluded that *O'Callahan* was indeed a jurisdictional limitation on the court's power. Nonetheless, each court declined to apply *O'Callahan* retroactively.[34] And in the Supreme Court, although *O'Callahan* limited military jurisdiction on constitutional grounds, it was held nonretroactive in *Gosa.* The exercise of jurisdiction by a tribunal later held to have acted improperly will not

---

petition be denied, and that Flemings' offense was service-related.

While I respectfully differ with Justice Douglas' application of the res judicata doctrine in a habeas corpus case, the application of res judicata in the case sub judice might be dispositive. *See* Part I *supra.*

**32.** 413 U.S. at 676, 93 S.Ct. at 2934. The tone of Justice Blackmun's approach tends to refute the implication by Justice Marshall that a technical jurisdictional impairment would require a retroactive application.

**33.** 413 U.S. at 694, 93 S.Ct. at 2943. Justice Marshall expressed the philosophy of four

members of the Court. Justice Brennan concurred; Justices Rehnquist and Stewart, believing *O'Callahan* to be wrongly decided, nevertheless concluded that its holding must be retroactive, in substantial agreement with Justice Marshall's reasoning. 413 U.S. at 692, 693, 93 S.Ct. 2926.

**34.** *Schlomann v. Mosely,* 457 F.2d 1223 (10th Cir. 1972), cert. denied 413 U.S. 919, 93 S.Ct. 3061, 37 L.Ed.2d 1041 (1973); *Gosa v. Mayden,* 450 F.2d 753 (5th Cir. 1971), aff'd, 413 U.S. 665, 93 S.Ct. 2926, 37 L.Ed.2d 873 (1973).

suffice ipso facto to void a final judgment.[35]

Were this Court to hold *Greenwell* broadly retroactive, the result would indeed be incongruous. *Gosa* and those like him, convicted before *O'Callahan* and denied fundamental constitutional rights, would remain in prison. In contrast, those whose courts-martial denied them no constitutional rights, whose trials would be virtually identical regardless of whether the court-martial authorization were proper or not, but whose trials were improperly convened under the regulation struck down in *Greenwell,* would enjoy a lump sum grant of back pay, effective immunity from retrial,[36] and correction of records, with all the benefits that flow therefrom.

### (c) The Impact of Ferry

As to trials conducted after *Greenwell,* the Court of Military Appeals in United States v. Ferry stated:

> Whatever effect *Greenwell* may have on a conviction in other situations, we have no doubt that a conviction invalid under *Greenwell* cannot be used to increase the sentence for a later offense beyond that which the accused would have received had that previous conviction not been considered. 22 U.S.C. M.A. 339, 340 (1973).

Plaintiffs here assert that *Greenwell,* retroactive to the extent it applies to the augmentation of sentence, must necessarily be extended further, to apply consistently and fully to all possible retroactivity issues. Retroactivity doctrines, it is maintained, are cumbersome and difficult of application without adding the further dimension of selective retroactivity. Plaintiffs urge that once the issue of retroactivity of a new ruling is determined, the consequences should and do extend to all related situations.

Yet it is clear that the doctrine need not be applied with such persistence as to expunge every potential utilization of an improper procedure. For example, in United States v. United States Coin & Currency, 401 U.S. 715, 91 S.Ct. 1041, 28 L.Ed.2d 434 (1971), the Supreme Court announced the general retroactivity of its decisions in Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968), and Grosso v. United States, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968), holding prosecutions under gambling regulation laws impermissible where a challenge to filing wagering registration forms was bottomed on the Fifth Amendment right against self-incrimination. However, on the very day *Marchetti* and *Grosso* were held retroactive, the Supreme Court announced in Mackey v. United States, 401 U.S. 667, 91 S.Ct. 1160, 28 L.Ed.2d 404 (1971), that use of these same forms, once completed, to procure a tax evasion conviction was not a basis for retroactive application of the *Marchetti/Grosso* rule. Justice White, in a plurality opinion joined by the Chief Justice and Justices Stewart and Blackmun, stated, "Mackey would have a significant claim only if *Marchetti* and *Grosso* must be given full retroactive sweep." 401 U.S. at 674, 91 S.Ct. at 1164. Justice White found that neither the purpose of the *Marchetti /Grosso* rule nor the reliability of the trial result mandated full retroactivity in *Mackey.*[37] Thus, there appear to be limits even to where a ruling is declared retroactive, short of uprooting every prior decision tangentially dependent on tainted prior law.

The implications of *Ferry* must be measured against the example furnished by *Mackey.* In *Ferry,* while meticulously limiting the scope of its holding, the Court of Military Appeals acted in conformity with the *Greenwell* rationale.

---

**35.** McSparran v. Weist, 402 F.2d 867 (3d Cir. 1968); Warring v. Colpoys, 74 U.S.App.D.C. 303, 122 F.2d 642, cert. denied 314 U.S. 678, 62 S.Ct. 184, 86 L.Ed. 543 (1941). *See* discussion, *supra.*

**36.** *See infra* Part 3.

**37.** Justice Brennan, for himself and Justice Marshall, concurred separately, stating that the use to which the information was put was not in conflict with the Fifth Amendment purpose served by not compelling its disclosure at all.

*Ferry* reflects an internal administrative vigilance by courts wishing to utilize only unimpeachable convictions for enhancement of further punishment. The prohibition on the use of pre-*Greenwell* convictions to augment sentences for future infractions allows *Greenwell* to be used as a shield for court-martial defendants, but not as their sword.

But, depending on the purpose to which the old conviction is put, giving it full effect or giving it no effect might be in order. *Ferry* and its philosophical underpinnings do not, and should not, bind the courts to all-out retrospectivity with its broad ramifications.

It is also to be noted that in *Ferry* the question of the continuing effect of a pre-*Greenwell* conviction arose in the context of a direct appeal, rather than as here in a collateral proceeding. In such context, *Ferry* might be seen as standing for the proposition that to give a serviceman increased punishment now, based on a court-martial which could not be convened today, would be to continue the effect of a flawed practice. Such use of a pre-*Greenwell* conviction would surpass any interest in finality and would permit subsequent detriment to a defendant.[37a] A holding that *Greenwell* is not retroac-

tive in the present case thus would not be inconsistent with the *Ferry* decision that limits subsequent affirmative use of prior convictions.

## 2. Habeas Corpus and Retroactivity: The Context of the Present Case.

Since it is determined that, assuming collateral attack to be permissible, automatic retroactivity is not appropriate, a weighing process must be employed. Beginning a decade ago, the Supreme Court proceeded to fashion a test to determine the advisability of non-retroactive application of new adjudications of constitutional dimension in criminal cases.[38] To defeat retroactivity in the criminal area a court had to draw three conclusions: the purpose of the new rule did not require retroactive application, the extent of reliance on the old practice by law enforcement officials was great, and the burden that would be imposed on the administration of justice by a holding of retroactivity suggested a prospective-only result.[39] *Linkletter* required that this careful calculus be performed for each new situation.[40] Retrospective application of new constitutional adjudications is now controlled by the

---

**37a.** *See* United States v. Tucker, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972); Burgett v. Texas, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967).

**38.** Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965); Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). Circumstances where courts have not been reluctant to grant full retrospective application, without consideration of the *Linkletter-Stovall* factors, include situations where persons had been convicted of "conduct that cannot constitutionally be punished in the first instance," United States v. United States Coin & Currency, 401 U.S. 715, 723, 91 S.Ct. 1041, 1046, 28 L.Ed.2d 434 (1971); or where, because of prior conviction for the same offense, the Double Jeopardy Clause interposed an insuperable barrier to prosecution, Robinson v. Neil, 409 U.S. 505, 93 S.Ct. 876, 35 L.Ed.2d 29 (1973). Retroactivity was also found where substantial detriment to the accused could be inferred that doubt was cast upon the validity of the result reached in a prior trial. Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d

799 (1963) (denial of counsel); Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964) (prejudicial material of doubtful probity coming before a jury).

**39.** A pivotal consideration is whether the soundness of the result achieved in the prior trials is open to substantial question because of the newly ascertained constitutional defect. Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966); United States v. Zirpolo, 450 F.2d 424 (3d Cir. 1971). Unlike other cases where retroactivity is warranted on this basis, *see* note 38 *supra*, in the case here no such doubt may be appropriately entertained.

**40.** *See e. g.*, Williams v. United States, 401 U.S. 646, 91 S.Ct. 1148, 28 L.Ed.2d 388 (1971), holding Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), not retroactive (limited search incident to arrest); DeStefano v. Woods, 392 U.S. 631, 88 S.Ct. 2093, 20 L.Ed.2d 1308 (1968), holding Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968), not retroactive (trial by jury).

latticework of doctrine that developed subsequent to *Linkletter* and *Stovall*.

In considering the present action in the context of habeas corpus principles, one further observation is significant: the non-constitutional nature of the defect struck down in *Greenwell*. Not every error of law can be raised in a collateral proceeding challenging the validity of a conviction. Last term, in Davis v. United States, 417 U.S. 333, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974), the Supreme Court held that non-constitutional claims can be asserted in collateral attacks on criminal convictions under 28 U.S.C. § 2255. However, the Court added that the scope of relief is more narrowly circumscribed where statutory, as opposed to constitutional, claims are presented. The Court made clear that habeas may not be used as a substitute for appeal.[41]

In general, no forum is provided by section 2255 to review non-constitutional errors of law not pressed on appeal, Sunal v. Large, 332 U.S. 174, 67 S.Ct. 1588, 91 L.Ed. 1982 (1949), even though "failure to take a direct appeal from conviction does not deprive a federal post-conviction court of power to adjudicate the merits of constitutional claims." Kaufman v. United States, 394 U.S. 217, 220, n. 3, 89 S.Ct. 1068, 1071, 22 L.Ed.2d 227 (1969). Indeed, total failure to raise a constitutional question at trial does not foreclose collateral habeas relief. *Kaufman, supra.*

Although the present case is not, as we have indicated, governed by the doctrines surrounding habeas corpus, their guidance is instructive. It would appear that, in general, federal *statutory* claims should be presented at trial to be available as grounds for collateral attack.

The plaintiffs assert here that it is imperative that a statutory construction by the Court of Military Appeals be applied retroactively. Yet the validity of the statute itself is not challenged in any regard. Nor is the power of the armed forces to try servicemen for the offenses in question assailed. Indeed, it is conceded that the offenses were properly triable by the military.

Also, no one questioned that the special court-martial was the proper forum in which to bring these servicemen to account. Nor is it claimed that the composition of the actual court-martial panel was improper or that the members were not qualified to preside over the individuals and offenses in question. And finally, it is not suggested that the appointment of the court-martial was by a person who, had he been personally authorized by the Secretary, could not have appointed them.

Rather, the narrow statutory decision at the core of the present controversy is that the authorization of "separate and detached," insofar as it carried the concomitant power to appoint the court-martial tribunal, was improperly communicated by the Secretary of the Navy. The Secretary's indirect appointment, pursuant to section 0103b(5), was found to be an improper delegation of his authority as civilian head of the Navy to inferior military personnel. Far from announcing a change of constitutional magnitude that might cast doubt on the fairness of the procedure or the validity of the results in trials conducted under the old rule, *Greenwell* requires, in effect, the rerouting of authorizing papers via the Secretary when new disciplinary commands are being established.[42]

---

41. 94 S.Ct. at 2303-2304. To the same effect, *see* Kaufman v. United States, 394 U.S. 217, 89 S.Ct. 1068, 22 L.Ed.2d 227 (1969); Sunal v. Large, 332 U.S. 174, 67 S.Ct. 1588, 91 L.Ed. 1982 (1947); Warring v. Colpoys, 74 U.S.App. D.C. 303, 122 F.2d 642, cert. denied, 314 U.S. 678, 62 S.Ct. 184, 86 L.Ed. 543 (1941).

It has been suggested in dictum that non-constitutional jurisdictional defects may be raised for the first time in habeas proceedings. The

fact that collateral attack is not barred does not, however, determine the outcome on the merits. *See*, Hill v. United States, 368 U.S. 424, 428, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962); Sunal v. Large, 332 U.S. 174, 179–181, 67 S.Ct. 1588, 91 L.Ed. 1982 (1947).

42. "The Secretary, according to his attorneys, has continued to empower small units as routinely and widely as before [*Greenwell*] by his power under [10 U.S.C.] § 823(a)(7)." 365

### 3. Retroactivity: The Balance.

Assuming the rules of habeas are applicable here, and considering that both case law and logic permit limited retroactivity, it is appropriate to turn to a determination of the extent of the retroactivity of the holding in *Greenwell* [43] under the *Linkletter-Stovall* test. [44] In this regard I concur with Judge Hunter's analysis and wish only to add the following observations.

This Circuit stated in United States v. Zirpolo that "[g]enerally, rulings not primarily designed to enhance the reliability of the fact-finding or truth-determining process have not been applied retroactively." [45] No substantial claim is made that the pre-*Greenwell* practice resulted in a likelihood of trials rendered vulnerable by unreliable evidence, improper procedures or other injustice. Nothing in the record questions the fairness of either the convictions or the sentences. A holding here of nonretroactivity would thus be consonant with the views espoused in *Zirpolo*. This Court has recently applied the *Zirpolo* test in a court-martial case, holding prospectively-only a ruling that struck down, on due process grounds, certain Articles of the Uniform Code of Military Justice. [46]

The rationale of the *Greenwell* rule would not be served by broad retroactive application. [47] The *Greenwell* court found that the purpose of Congress in requiring a personal designation from the Secretary in order to establish an independent disciplinary command was to retain the reins on special court-martial jurisdiction in the hands of the civilian Secretary of the Navy.

While prospective implementation of the *Greenwell* rule will advance the desired effect, broad application of the rule to the past, voiding all convictions, and requiring repayment of the fines and forfeitures pursuant thereto, would have no impact on furthering the results intended by Congress. All past abuses terminated with *Greenwell*. Prior designa-

---

F.Supp. 328, 348 (E.D.Pa.1973). A letter, reproduced in Addendum to Brief of Appellee, 33c–35c, constitutes one such personal authorization from the Secretary of the Navy to roughly 40 commands empowering them to convene special courts-martial. Included therein are the commands of the two named plaintiffs in this class action (Transient Facility, Camp Smedley D. Butler, Okinawa, which court-martialed plaintiff Brown; Student Company, Marine Corps Base, Camp Pendleton, which on two occasions sentenced plaintiff Taylor after guilty pleas).

**43.** The district court stated its accord with the *Greenwell* result, 365 F.Supp. at 347; the correctness of the *Greenwell* decision is not before us here.

**44.** Linkletter v. Walker declares that "once the premise is accepted that we are neither required to, nor prohibited from applying, a decision retrospectively, we must then weigh the merits and demerits in each case . . . ." 381 U.S. 618, 629, 85 S.Ct. 1731, 1738, 14 L.Ed.2d 601 (1965). The decision must reflect concern with "the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard" the interests served by the new precept. *Id. See* Chevron Oil Co. v. Huson, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971); Cipriano v. City of Houma, 395

U.S. 701, 89 S.Ct. 1897, 23 L.Ed.2d 647 (1969).

**45.** 450 F.2d 424, 432 (3d Cir. 1971). *See also* United States ex rel. Matthews v. Johnson, 503 F.2d 339 (3d Cir. Aug. 15, 1974). Although the majority of the Court en banc in *Matthews* did not reach the issue, the three judges who discussed retroactivity relied on *Linkletter-Stovall* and *Zirpolo*. They concluded they would not apply retroactively a ruling requiring jury instructions on voluntary manslaughter for murder defendants, although the failure to give such instructions in the past admittedly violated defendants' constitutional rights, and resulted in what might well have been unfair sentences.

**46.** Parker v. Levy, 478 F.2d 772, 796 (3d Cir. 1973), rev'd on other grounds, 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974).

**47.** Appellants urge, in reliance on Bell v. United States, that Congress intended a presumption to operate in favor of a serviceman, that he would receive statutory pay and allowances unless and until he was subjected to discipline by a "duly constituted court-martial." 366 U.S. 393, 402, 81 S.Ct. 1230, 6 L.Ed.2d 365 (1961). This presumption, even if admitted, carries no implications for the question of broad retroactivity for *Greenwell*.

tions of "separate and detached" ceased to constitute authorization for the power to convene special courts-martial.[48] Accordingly, no lingering effects are perceptible on the allocation of power within the military.[49]

Under *Linkletter-Stovall*, a court must consider the impact of a holding of retroactivity both in terms of its practical effects and the fairness of the result obtained. Were *Greenwell* held fully retroactive, the administrative burden would be considerable. Searching and correcting all applicable records would absorb substantial personnel time, and there would be problems regarding not only back pay but retirement status, veterans' benefits, and pensions.[50]

Generally, once a decision has been declared fully retroactive, convictions are overturned, records are expunged, and the defendants become subject to retrial under a proper procedure. No retrial would be possible here, however, because in almost all cases, including the two named plaintiffs in this action, those affected are no longer in the military and, persons who have left the military may no longer be subjected to military discipline.[50a] The statute of limitations might also operate as a bar. And even if retrial were available, any further proceedings would differ in no particular from the trials undergone in the first instance.[51]

The net result of according complete retroactivity to the *Greenwell* rule, especially in this case, would be to afford a windfall to the plaintiffs. Such would be unwarranted under the generally acknowledged functions to be served by making judicial determinations retroactive or by the purpose of the *Greenwell* holding itself.[52]

Thus, were full retroactivity established here, the principal results would be that a material administrative disruption would be entailed, and benefits would inure to a class that concededly has committed violations of military law.

### III. Conclusion.

Justice Cardozo reminded us that "the inn that shelters for the night is not the journey's end." Rather, the law which is announced today must be ready for tomorrow. If we write too broadly, overturning final judgments in cases like the present one, if we apply black-letter law where circumstances require discrete case-by-case treatment, we shall place ourselves in a legal straitjacket, and be

---

**48.** *See* United States v. Cunningham, 21 U.S.C.M.A. 144 (1971), and cases cited therein. Were the plaintiffs still imprisoned under the convictions challenged here, and were they before this Court on petitions for habeas corpus, different considerations would be introduced.

**49.** It is claimed that an interest does exist in curbing whatever potential abuse there is in permitting small units at the end of a chain of command to exercise such court-martial jurisdiction. We note, however, in agreement with the district court, that the statute properly construed does not alter whatever abuse might be generated by these practices. There is no change in eligibility for "separate and detached" status, and such appointments may continue to be made routinely and wholesale so long as they are made directly by the Secretary. *See* note 42, *supra.*

**50.** Legitimate measurement of this administrative burden is not limited, as appellants claim, to the problems surrounding relitigation of offenses. Wolff v. McDonnell, 418

U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). Gosa v. Mayden, 413 U.S. 665, 683, 93 S.Ct. 2926, 37 L.Ed.2d 873 (1973).

**50a.** Toth v. Quarles, 350 U.S. 11, 76 S.Ct. 1, 100 L.Ed. 8 (1955).

**51.** Toth v. Quarles, 350 U.S. 11, 76 S.Ct. 1, 100 L.Ed. 8 (1955). Further trial would, at the very least, be difficult of achievement. Since the offenses in question were petty crimes, evidence and witnesses to prove them would doubtless be unobtainable in almost all cases. To this extent the government's legitimate interests in discipline, in deterrence, and in rehabilitation would go unsatisfied. Williams v. United States, 401 U.S. 646, 91 S.Ct. 1148, 28 L.Ed.2d 388 (1971).

**52.** A serious question of inequality of treatment would arise vis-a-vis those servicemen who, by mere happenstance, were less fortunate in being tried on identical charges before substantially the same type of special courts-martial, but tribunals that were empowered under 10 U.S.C. § 823(a)(1)–(6).

unable to deal rationally with these difficult questions as they present themselves in the future.

Because the res judicata effects of a final judgment are conclusive in the context of a civil action, and because even under a habeas approach retroactivity is not warranted, at least on the basis of the factual situation here, the requested · relief may not appropriately be granted to plaintiffs.

GARTH, Circuit Judge (dissenting).

I am obliged to dissent from Part II of the majority opinion. Like Judge Hunter, I believe that there is much "to recommend" the approach that accords full retroactivity to decisions involving the adjudicatory powers of tribunals. Unlike Judge Hunter, I do not believe that McSparran v. Weist[1] bars such an approach.

## A. Retroactivity and Jurisdiction

As a general rule of jurisprudence, judicial decisions apply retroactively. See Comment, Linkletter, Shott and the Retroactivity Problem in Escobedo, 64 Mich.L.Rev. 832, 834 (1966). Nevertheless, in recent years the "Austinian" method of restricting a decision to prospective effect has come into vogue, as the Supreme Court has striven to limit the disruptions caused by reforms in the area of criminal procedure. See, e. g., Linkletter v. Walker, 381 U.S. 618, 622–623,·85 S.Ct. 1731, 14 L.Ed.2d 601 (1965) (denying complete retroactivity to Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081); Tehan v. United States ex rel. Shott, 382 U.S. 406, 86 S.Ct. 459, 15 L.Ed.2d 453 (1966) (denying complete retroactivity to Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106); Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966) (denying complete retroactivity to Miranda and Escobedo); Desist v. United States, 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969) (denying complete retroactivi-

ty to Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576); Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967) (denying complete retroactivity to United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149, and Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178). In Linkletter and its progeny, the Supreme Court developed a practical calculus for determining retroactivity-prospectivity issues. Under this approach, a court must evaluate (a) the purpose of the new rule, (b) the extent of reliance upon the old rule, and (c) the effect of applying the new rules retroactively. See Stovall v. Denno, 388 U.S. 293, 297, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). This calculus has been applied in this Circuit[2] and, indeed, was utilized by the majority in reaching its conclusions here.[3]

It is important to note, however, that the Linkletter-Stovall calculus is neither a panacea nor a solution to all retroactivity problems. In Robinson v. Neil, 409 U.S. 505, 508, 93 S.Ct. 876, 35 L.Ed.2d 29 (1973), the Supreme Court explained that the analysis developed in Linkletter and its progeny pertained to the "use of evidence" and to "particular mode[s] of trial." Decisions that do not involve such procedural matters "cannot, for retroactivity purposes, be lumped conveniently together in terms of analysis." 409 U.S. at 508, 93 S.Ct. at 878.

The instant case involves no such procedural matters. At issue here is the retroactivity of a decision (United States v. Greenwell) which declared a particular type of tribunal incompetent to conduct special courts-martial. The Court of Military Appeals did not rule upon the admissibility of evidence at Greenwell's hearing. Nor did the Court of Military Appeals enter into a discussion of a recommended mode of trial. Instead, as the majority opinion here explains, the Court of Military Appeals was concerned with the illegal exercise of judicial pow-

---

1. 402 F.2d 867 (3d Cir. 1968) (en banc), cert. denied, 395 U.S. 903, 89 S.Ct. 1739, 23 L.Ed.2d 217 (1969).

2. See, e. g., United States v. Zirpolo, 450 F.2d 424, 432 (3d Cir. 1971).

3. See (Judge Hunter's) Majority Opinion at 625.

er by a tribunal that was not authorized by Congress to conduct special courts-martial. I find nothing either in *Linkletter* or its progeny which suggests that the calculus therein adopted would apply to situations in which a tribunal is held to be incompetent to adjudicate. While the majority regards the *Linkletter-Stovall* analysis as dispositive in the instant case, I view it—on the basis of Robinson v. Neil—as of only peripheral importance.

In my view, decisions concerning the power of a court to adjudicate[4] (i. e. "jurisdiction," in the true sense of the word) should normally be given retroactive effect without regard to the three-pronged test articulated in *Stovall*. A decision rendered by a military tribunal incompetent to adjudicate is a nullity. *See* United States v. Cunningham, 21 U.S.M.C.A. 144, 146 (1971); United States v. Greenwell, 19 U.S.C.M.A. 460, 464 (1970); United States v. Ortiz, 15 U.S.C.M.A. 505, 510 (1965), petition for reconsideration denied, 16 U.S.C.M.A. 127 (1966); *cf.* McClaughry v. Deming, 186 U.S. 49, 22 S.Ct. 786, 46 L.Ed. 1049 (1902). I find it difficult to understand how such a null and void decision can be given legally operative effect merely as a result of a fortuity in timing. Indeed, were this court to sanction such a result, jurisdiction would become a matter controlled by litigation timing rather than a concept limited by Congress.

The Supreme Court has, on three separate occasions, indicated at least some support for the proposition that jurisdictional decisions should normally be given full retroactive effect. In United States v. United States Coin & Currency, 401 U.S. 715, 91 S.Ct. 1041, 28 L.Ed.2d 434 (1971), the government initiated prosecution for forfeiture of moneys used in gambling operations, pursuant to 26 U.S.C. § 7302 (1967). After commencement of the litigation, the Supreme Court invalidated the statutes which formed the basis for the forfeiture on the grounds that the statutes infringed upon the Fifth Amendment privilege against compulsory self-incrimination. *See* Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968); Grosso v. United States, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968). The Court held in *United States Coin & Currency* that *Grosso* and *Marchetti* were to be applied retroactively. This decision was reached without reference to the *Linkletter-Stovall* calculus, Justice Harlan explaining that:

> Unlike some of our earlier retroactivity decisions, we are not here concerned with the implementation of a procedural rule which does not undermine the basic accuracy of the factfinding process at trial. Linkletter v. Walker, 381 U.S. 618 [85 S.Ct. 1731, 14 L.Ed.2d 601 (1965)]; Tehan v. Shott, 382 U.S. 406 [86 S.Ct. 459, 15 L.Ed.2d 453 (1966)]; Johnson v. New Jersey, 384 U.S. 719, [86 S.Ct. 1772, 16 L.Ed.2d 882 (1966)]; Stovall v. Denno, 388 U.S. 293 [87 S.Ct. 1967, 18 L.Ed.2d 1199

---

4. It has been suggested that the defect corrected in *Greenwell*—the improper delegation of authority by the Secretary of Navy—is too "technical" to constitute a jurisdictional error. Without minimizing the technicalities inherent in matters of personal and subject matter jurisdiction (*see, e. g.,* the technical rules that have developed to determine a corporation's citizenship for purposes of diversity jurisdiction, 1 Moore's, Federal Practice, ¶ 0.77–0.78), I regard the suggested minimization of *Greenwell* as barred by McClaughry v. Deming, 186 U.S. 49, 22 S.Ct. 786, 46 L.Ed. 1049 (1902). In *McClaughry*, the Court was required (in a habeas corpus proceeding) to determine whether a reservist officer could be tried by a court composed entirely of officers in the Regular Army. The Court found that Congress had provided by statute that reservist officers be tried only by courts-martial com-

posed of other reservist officers. Justice Peckham concluded:

> As to the officer to be tried there was no court, for it seems to us that it cannot be contended that men, not one of whom is authorized by law to sit, but, on the contrary, all of whom are forbidden to sit, can constitute a legal court-martial because detailed to act as such court by an officer who in making such detail acted contrary to and in complete violation of law. Where does such a court obtain jurisdiction to perform a single official function? How does it get jurisdiction over any subject-matter or over the person of any individual? The particular tribunal is a mere creature of the statute, as we have said, and must be created under its provisions.

186 U.S. at 64, 22 S.Ct. at 792.

(1967)]. Rather, *Marchetti* and *Grosso* dealt with the kind of conduct that cannot constitutionally be punished in the first instance.

401 U.S. at 723, 91 S.Ct. at 1045. Admittedly, Justice Harlan makes no reference to the concept of subject matter jurisdiction. Nevertheless, it is apparent that the Court predicated its retroactivity holding upon the fact that courts are *without power* to punish the conduct proscribed by the unconstitutional gambling statutes. Robinson v. Neil, thoroughly discussed by the majority, similarly holds retroactive a decision (Waller

v. Florida)[5] which limits the adjudicatory power of courts.

A case more directly on point is Gosa v. Mayden, 413 U.S. 665, 93 S.Ct. 2926, 37 L.Ed.2d 873 (1973). At issue in *Gosa* was the retroactivity of O'Callahan v. Parker, 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969) (servicemen charged with "nonservice-connected" felonies are entitled to indictment by a grand jury and a trial by jury in a civilian court). The Supreme Court, reviewing decisions of the Second[6] and Fifth[7] Circuits, produced no majority opinion and no concise resolution of the retroactivity issue.[8] Of

---

**5.** 397 U.S. 387, 90 S.Ct. 1184, 25 L.Ed.2d 435 (1970).

**6.** In 1970, James Flemings brought an action in the Eastern District of New York seeking to compel the Secretary of the Navy to overturn a court-martial conviction for auto theft and to correct his records accordingly. The District Court, viewing the crime as non-service connected, concluded that *O'Callahan* should be applied retroactively. United States ex rel. Flemings v. Chafee, 330 F.Supp. 193 (E.D.N.Y.1971). In reaching this conclusion, Judge Weinstein found the *Linkletter-Stovall* approach to be inapplicable, the court drawing a distinction between the jurisdictional aspects of *O'Callahan* (i. e. the holding that military courts are without *power* to resolve non-service related criminal prosecutions) and the quasi-jurisdictional/procedural aspects of *Linkletter* and its progeny. 330 F.Supp. at 199–203. The Second Circuit affirmed, concluding that:

> [t]he recent Supreme Court cases denying retrospective application to new rules of criminal procedure where and only where . . . the old rules did not threaten the basic integrity of the court's truth determining process, are not compelling precedent when applied to a case founded on the absence of jurisdiction or power over the subject or person. Not one of the cases establishing a new principle which was limited to prospective application involved a total absence of adjudicatory power. Moreover, if some decisions which were not based upon concepts of jurisdictional competence have been applied retroactively . . . a *fortiori* a case which exists on lack of jurisdiction in the traditional sense and seeks to preserve the basic integrity of the institutions which enforce our criminal laws, must be so applied. *See* United States v. United States Coin & Currency [401 U.S. 715, 91 S.Ct. 1041, 28 L.Ed.2d 434] . . . .

458 F.2d 544 at 550–551.

**7.** In 1969, James Roy Gosa commenced a habeas corpus proceeding in the Northern District of Florida to overturn a court-martial conviction for rape. Construing *O'Callahan* as merely a quasi-jurisdictional decision (i. e. a decision focusing upon the right to indictment by a grand jury and the right to a jury trial), the District Court applied the *Linkletter-Stovall* calculus and concluded that *O'Callahan* should *not* be applied retroactively. Gosa v. Mayden, 305 F.Supp. 1186 (N.D.Fla. 1969). The Fifth Circuit affirmed, though its analysis differed somewhat from that of the District Court. 450 F.2d 753 (5th Cir. 1971). Unlike the District Court, the Court of Appeals interpreted *O'Callahan* as a "pure" jurisdictional decision (i. e. a decision focusing upon adjudicatory power). Nevertheless, the Fifth Circuit viewed it as appropriate to determine the retroactivity of the "jurisdictional" decision on the basis of the *Linkletter-Stovall* calculus.

**8.** The judgment of the Supreme Court affirmed the Fifth Circuit (450 F.2d 753) and reversed the Second Circuit (458 F.2d 544). With regard to 450 F.2d 753, the affirmance was achieved as a result of the following split:

a) Justices Blackmun, Burger, White and Powell concluded that *O'Callahan* should *not* be applied retroactively (413 U.S. at 672–686, 93 S.Ct. 2926);

b) After conceding that prior precedent (including Robinson v. Neil, *supra*) required retroactive application of *O'Callahan*, Justice Rehnquist voted to affirm nevertheless since he favored overruling *O'Callahan* as wrongly decided (413 U.S. at 692, 93 S.Ct. 2926);

c) Justice Douglas voted for reargument on the issue of res judicata (413 U.S. at 686–691, 93 S.Ct. 2926); and

d) Only Justices Marshall, Brennan, and Stewart voted to reverse on the grounds that *O'Callahan* should be applied retroactively (413 U.S. at 693–716, 93 S.Ct. 2926).

the Justices reaching the retroactivity issue, four applied the *Stovall* factors and concluded that *O'Callahan* should be restricted to prospective effect, while four others indicated that retroactivity was appropriate on non-*Stovall* grounds. Justice Marshall, writing for the latter group, concluded that Robinson v. Neil and United States v. United States Coin & Currency "require" retroactive application of *O'Callahan*, given the *O'Callahan* decision's focus upon jurisdiction. 413 U.S. at 700, 93 S.Ct. 2926. As in *Robinson* and *United States Coin & Currency*, Justice Marshall wrote that in *Gosa* "we are concerned not with 'the implementation of a procedural rule,' but with an unavoidable constitutional impediment to the prosecution of particular conduct." 413 U.S. at 701, 93 S.Ct. at 2947. He explained:

> In *O'Callahan* . . . the ultimate issue was the extent of the constitutional power that underlies the jurisdiction of military tribunals. Where an offense lies outside the limits of that power, there exists just as much of a constitutional impediment to trial by court-martial as there existed to a civil trial in *Marchetti* and *Grosso* due to the privilege against self-incrimination or in *Waller* due to the Double Jeopardy Clause. It cannot be forgotten that military tribunals are courts of limited jurisdiction. See McClaughry v. Deming, 186 U.S., at 63, 22 S.Ct. [786], at 791; Ex Parte Watkins, 3 Pet. 193, 209 [7 L.Ed. 650] (1830). They cannot exercise authority which Congress has not conferred upon them, much less authority which Congress is without constitutional power to confer. It is this fundamental principle that compels retroactive application of the decision in *O'Callahan*. (footnote omitted)

With regard to No. 71–1398 (Second Circuit), the 7–2 reversal was achieved as a result of the following split:

a) Justices Blackmun, Burger, White and Powell concluded that *O'Callahan* should not be applied retroactively (see above);
b) Justices Douglas, Stewart, and Rehnquist concluded that *O'Callahan* was inapplicable on the ground that the automobile

413 U.S. at 701–702, 93 S.Ct. at. 2947.

In the instant case, the majority minimizes the relevance of *Robinson, United States Coin & Currency*, and *Gosa*. The first two cases are distinguished on the grounds that *Waller, Marchetti* and *Grosso* (but not *Greenwell*) "had the effect of ending the defendants' criminal liability." Opinion at 625, n. 6. I regard the fact that Greenwell might be exposed to further proceedings as a difference, but not a meaningful distinction. As Justice Marshall suggested in his *Gosa* dissent, this difference relates merely to the "impediment to trial" at issue in the various cases. 413 U.S. at 702–703, 93 S.Ct. 2926. Regardless of whether or not there could be further prosecution, in each case (including *Greenwell*), it was determined in each that the *nisi prius* court lacked the power to adjudicate the issues raised in the pleadings.

The majority deprecates the relevance of *Gosa* by concluding that the Supreme Court split 4–4 on the issue of whether jurisdictional decisions should be accorded retroactivity (without concern for the *Linkletter-Stovall* analysis). I read *Gosa* differently. I count four Justices (Marshall, Brennan, Stewart and Rehnquist) who have concluded that jurisdictional decisions should be applied retroactively (see n. 8, supra). I can find no Justice supporting a contrary conclusion; i. e. none of the opinions filed in *Gosa* take the view that the retroactivity of jurisdictional decisions must be analyzed in terms of the *Linkletter-Stovall* calculus. The four Justices who voted in favor of prospectivity did so not as a result of the jurisdictional aspects of *O'Callahan*, but rather as a result of their characterization of that case as one dealing with procedure.[9] In short, the split was not

theft was "service-connected" (413 U.S. at 686, 692 and 693, 93 S.Ct. 2926); and
c) Only Justices Marshall and Brennan voted to affirm on the grounds of retroactive application of *O'Callahan*.

9. Indeed, Justice Marshall highlighted this characterization, stating that:

> "Mr. Justice Blackmun's plurality opinion, by its efforts to establish that O'Calla-

4–4, but rather 4–0, on the issue of whether jurisdictional decisions should be accorded full retroactivity.

I am convinced by *Robinson* and *United States Coin & Currency* that decisions involving the adjudicatory power of courts should normally be accorded full retroactivity. My analysis of Gosa v. Mayden leads me to believe that there is a strong likelihood that the Supreme Court would expressly so hold if the issue were directly before it. Inasmuch as *Greenwell* focused upon the adjudicatory power of a particular type of military tribunal, I would therefore apply it retroactively in the instant case.

### B. *McSparran and Retroactivity*

As the majority quite properly points out, there is one major obstacle to the analysis set forth above. In McSparran v. Weist, 402 F.2d 867, 877 (3d Cir. 1968), cert. denied, 395 U.S. 903, 89 S.Ct. 1739, 23 L.Ed.2d 217 (1969), we stated in the course of an opinion limiting a decision to prospective effect:

> It is true that we deal here with a jurisdictional question. But the notion that "jurisdiction" is a subject of some magical quality so that a decision against jurisdiction prevents according recognition to other relevant considerations must yield to the knowledge that it is our construction of the statute which determines in the present case whether jurisdiction exists or is absent.

The majority here concluded that this passage precludes this court from ignor-

han v. Parker, 395 U.S. 258 [89 S.Ct. 1683, 23 L.Ed.2d 291] (1969), was not a decision dealing with jurisdiction in its classic form, implicitly acknowledges that if *O'Callahan* were in fact concerned with the adjudicatory power—that is, the jurisdictional competency—of military tribunals, its holding would necessarily be fully retroactive in effect . . . ."
413 U.S. at 693–694, 93 S.Ct. at 2943. The majority opinion here rejects the suggestion that Justice Blackmun implicitly agreed that jurisdictional decisions are to be applied retroactively. The majority notes that the plurality opinion "never denied the fact that [*O'Callahan*] spoke to a jurisdictional issue." Opinion at 625. While this may be true,

ing the *Linkletter-Stovall* calculus. I disagree.

I find *McSparran* to be distinguishable and therefore do not see it as a bar to the above analysis. In *McSparran*, this Court was required to determine whether the appointment of a "straw" guardian solely for the purpose of creating diversity jurisdiction amounted to collusion under 28 U.S.C. § 1359.[10] Reversing prior case law,[11] this Court concluded that such "manufacturing" of diversity jurisdiction offends § 1359. 402 F.2d at 876. Two significant distinctions are apparent to me. First in *McSparran*, but not in *Greenwell*, the *nisi prius* court had at least "facial" jurisdiction. That is, in *McSparran* the apparent diversity of the parties conferred jurisdiction in the district court, subject to a later finding of collusion. In *Greenwell*, on the other hand, the improper delegation of authority deprived the special court-martial of jurisdiction *ab initio*. Secondly, it is crucial to note the difference in the operative effect of the judgments that might have issued. As discussed earlier, a judgment rendered by an improperly constituted court-martial is null and void (*see* p. 643 *supra*). In contradistinction, "a judgment based upon an erroneous finding of diversity is not void and is immune from collateral attack." Lester v. McFaddon, 415 F.2d 1101, 1107 (4th Cir. 1969); *see also* Noble v. Union River Logging Railroad, 147 U.S. 165, 173–174, 13 S.Ct. 271, 37 L.Ed. 123 (1893). *McSparran's* demeaning of retroactivity in "jurisdictional" cases thus may be lim-

the majority actually begs the question. There is nothing in the plurality opinion that would prevent its author from adopting Justice Marshall's position in a case that Justice Blackmun construed as involving "pure" jurisdiction.

10. 28 U.S.C. § 1359 provides:
   A district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court.

11. *See* Corabi v. Auto Racing, Inc., 264 F.2d 784 (3d Cir. 1959); Jaffe v. Philadelphia & Western R. Co., 180 F.2d 1010 (3d Cir. 1950).

ited to situations in which the jurisdictional error does not vitiate the legal efficacy of the ultimate judgment.

I do concede that the passage quoted from *McSparran* does not expressly suggest the limitations which I have proposed. If the majority is correct in concluding that *McSparran* demands application of the *Linkletter-Stovall* calculus. I believe that it is time to reevaluate *McSparran's* retroactivity analysis in light of the Supreme Court's subsequent conclusions in *Robinson* and *United States Coin & Currency* and in light of Justice Marshall's uncontroverted dissent in Gosa v. Mayden.

Accordingly, I dissent from that portion of Part II of the majority opinion which opts for utilization of the *Linkletter-Stovall* calculus. I would reverse the District Court on the grounds that *Greenwell*, as a decision relating to adjudicatory power, must be applied retroactively.