Renny POTTER, dba Moraine
Grill, Plaintiff,

v.

Louis O. GUIFFRIDA, Defendant.

No. C–3–82–621.

United States District Court,
S.D. Ohio, W.D.

March 31, 1986.

Laurence J. Rab, Dayton, Ohio, for plaintiff.

Gerald F. Kaminski, Asst. U.S. Atty., Cincinnati, Ohio, for defendant.

## DECISION AND ENTRY SUSTAINING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DOC. # 14); PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OVERRULED; TERMINATION ENTRY

RICE, District Judge.

This case comes before the Court on Cross Motions for Summary Judgment (Docs. # 13, # 14).

At issue in this case is the construction of a clause in the commercial crime insurance policy which Plaintiff obtained for her bar and grill under the auspices of the federal crime insurance program. *See* 12 U.S.C. § 1749bbb–10a–10d. The policy provided for insurance coverage of up to $15,-000 for loss due to robbery. (Doc. # 13, Exh. 1). In the event that property being conveyed by a messenger outside of Plaintiff's premises was lost due to robbery, however, Insuring Agreement II of the insurance policy limited Plaintiff's recovery to $5,000 "except when an armed guard accompanies the messenger."

After being robbed of $26,000 outside the Third National Bank branch office at 3029 Kettering Boulevard, Plaintiff filed a timely insurance claim for robbery coverage. She was offered only $5,000, rather than the full $15,000 policy limit, on the basis that she was not accompanied by an armed guard at the time of the robbery. Plaintiff then filed this lawsuit, pursuant to 12 U.S.C. Section 1749bbb–11.

Both Plaintiff and Defendant, the director of the Federal Emergency Management Agency, have filed Motions for Summary Judgment. From the pleadings, exhibits, and depositions submitted by the parties, this Court finds that there is no genuine issue of material fact with respect to Plaintiff's failure to comply with the terms of the policy for purposes of a full policy limits recovery. The Court thus concludes that, as a matter of law, Defendant is entitled to judgment in his favor. Accordingly, Defendant's Motion for Summary Judgment is sustained (Doc. # 14), and the Plaintiff's Motion for Summary Judgment is denied (Doc. # 13).

## A. FACTS

The facts are not in dispute in this case. On August 27, 1981, at some time between 10 a.m. and 11 a.m., Plaintiff left the Moraine Bar and Grill and drove to the Third National Bank branch office located at the corner of Dorothy Lane and Kettering Boulevard. Her purpose for the trip to the bank was to deposit payroll checks which her business had taken in from customers during the prior several days and to obtain money with which to cash the payroll checks of customers who would be patronizing her bar and grill later that day. (Deposition of Renny Potter, pgs. 21–25, 34–36 and Exhibit 5; deposition of Sharon Adcox, pgs. 10–11). As Plaintiff left the bar in her own car, she was followed in a separate vehicle by Sharon Adcox, the manager of the Moraine Bar and Grill. Ms. Adcox was armed. (Deposition of Renny Potter, pgs. 25–26; deposition of Sharon Adcox, pgs. 12–13, 16–17). Sharon Adcox followed Plaintiff as they drove their vehicles along the following route from the bar to the bank: west on Blanchard to Route 741 (Springboro), north on Route 741 (Springboro) to Dorothy Lane, east on Dorothy Lane to Kettering Boulevard (Dixie Drive). (Deposition of Renny Potter, pgs. 27–28; deposition of Sharon Adcox, pgs. 13–17 and Exhibit 1).

The Third National Bank branch office to which Plaintiff and Sharon Adcox were headed is located at the southwest corner of the intersection of Dorothy Lane and Kettering Boulevard (Dixie Drive). Plaintiff pulled her car into the parking lot of the Third National Bank branch office at the Dorothy Lane entrance. (Deposition of Renny Potter, pgs. 30–31; deposition of Sharon Adcox, pgs. 20–23 and Exhibit 1). The last visual contact which Sharon Adcox had with the Plaintiff prior to the robbery occurred just after Plaintiff pulled into the bank parking lot, as Sharon Adcox waited for the traffic light at the intersection of Dorothy Lane and Dixie Drive to change. (Deposition of Sharon Adcox, pgs. 21, 28–29).

Sharon Adcox then turned south on Dixie Drive (Kettering Boulevard), continued past the Dixie Drive entrance to the Third National Bank branch office, and turned into the parking lot of a Kentucky Fried Chicken Restaurant located on the eastern side of Dixie Drive. (Deposition of Sharon Adcox, pgs. 19–25 and Exhibit 2). Sharon Adcox stationed herself at the exit of the restaurant facing Dixie Drive. The plan agreed to by Plaintiff and Sharon Adcox for these trips to the bank was that Ms. Adcox was to wait at the exit of the Kentucky Fried Chicken Restaurant parking lot until Plaintiff completed her banking, returned to her car, exited from the Third National Bank branch office parking lot and proceeded south on Dixie Drive. At the point that Plaintiff passed the Kentucky Fried Chicken Restaurant, Sharon Adcox was to depart from the restaurant's exit and follow the Plaintiff back to the Moraine Bar and Grill. (Deposition of Renny Potter, pgs. 19–20, 31–32; deposition of Sharon Adcox, pgs. 21–22, 25–26).

Unfortunately, on the date in question, Plaintiff and Sharon Adcox were unable to carry out their customary arrangements. Plaintiff parked her car in the Third National Bank branch office parking lot, entered the bank, and withdrew $26,700 in cash. (Deposition of Renny Potter, pgs. 30–31, 33–36 and Exhibits 3 and 4). Plaintiff placed the money in her purse, left the bank and returned to her car. Just as she had unlocked the door and was preparing to get in, a robber approached her from behind. The robber placed a gun at Plaintiff's back, grabbed her purse, and fled with the purse and the $26,700 contained therein. (Deposition of Renny Potter, pgs. 31–39). Plaintiff screamed and darted back into the bank. Bank officials then contacted law enforcement officials, who to date have failed to apprehend the robber. (Deposition of Renny Potter, pgs. 39–40).

As Sharon Adcox waited for the traffic light at the intersection of Dorothy Lane and Dixie Drive, she observed Plaintiff exit from her car in the bank parking lot. (Deposition of Sharon Adcox, pgs. 20–21). Ms. Adcox does not remember whether she observed the Plaintiff enter the bank. (Deposition of Sharon Adcox, pgs. 25–26). From her vantage point in her car in the Kentucky Fried Chicken parking lot, Sharon Adcox was unable to watch Plaintiff attend to her banking business, or to observe Plaintiff leave the bank upon completion of her transaction. (Deposition of Sharon Adcox, pg. 26). Nor was Sharon Adcox able to deter the robbery, to observe the robbery or to assist law enforcement officials in the pursuit and apprehension of the thief. (Deposition of Sharon Adcox, pgs. 26–29). Indeed, from her vantage point in the Kentucky Fried Chicken Restaurant parking lot, Sharon Adcox was so removed from contact with Plaintiff that she was unaware that a robbery had even occurred until 15 or 20 minutes after the incident. (Deposition of Sharon Adcox, pgs. 27–30). Only upon becoming suspicious that something might have befallen Plaintiff did Sharon Adcox leave the parking lot at Kentucky Fried Chicken, drive to the bank, and enter the bank, where she learned of the robbery. (Deposition of Sharon Adcox, pgs. 30–31).

## B. DISCUSSION

Plaintiff advances two theories as to why she is entitled to prevail in this action. Her first position is that the phrase "accompanied by an armed guard" is ambiguous and

that the dictionary meaning of "accompanied" includes "to go with." Plaintiff thus contends that she was "accompanied" within the meaning of the insurance policy at the time of the robbery, given that Sharon Adcox had followed her to the bank in a separate vehicle.

■ The Court notes that Plaintiff's insurance policy is explicitly made subject to the Crime Insurance Provisions of Title VI of the Housing and Urban Development Act of 1970, which authorizes the creation of such an insurance program, and the regulations issued under said statute. 12 U.S.C. Section 1749bbb–10a, *et seq.*, 44 C.F.R. Parts 80–82. As such, Plaintiff's insurance contract is a federal contract governed by principles of general contract law. *Bituminous Casualty Corporation v. Lynn*, 503 F.2d 636, 641 (6th Cir.1974).

■ Application of the rules governing federal contracts, which are derived from the common law, indicates the difficulties with Plaintiff's first argument. Consideration of the phrase "except when an armed guard accompanies the messenger" in the context of the insurance contract itself, and the purpose both of the contract and for the inclusion of the armed guard requirement for theft outside of the insured's premises, are essential to the Court's inquiry. E.A. Farnsworth, Contracts, Section 7.10 (1982). While Webster's Dictionary might certainly include the concept of "going with" within the range of meanings of the word "accompanied," Plaintiff's selection of this meaning for the word "accompanies" tends to highlight the incongruity of her conduct on August 27, 1981 *vis a vis* the requirements of her insurance policy.

The congressional findings and declarations of purpose in providing federal crime insurance to small businesses reflect an intent to provide commercial insurance coverage in inner-city areas where adequate state property insurance coverage was unavailable. Section 1, Public Law 94–13 and Section 1102, Public Law 90–448, reprinted in 12 U.S.C.A. Section 1749bbb (West 1980). In keeping with the urban conditions which

the federal insurance program is intended to ameliorate, the federal crime insurance policy which Plaintiff obtained required that any messenger leaving her premises with more than $5,000 in cash be accompanied by an armed guard, in order both to avoid the lure to thieves of large sums and to avoid the corresponding need for sizeable insurance claims. Given the purpose for which such a clause was inserted in Insuring Agreement II, "except when an armed guard accompanies the messenger" can only mean that the armed guard is to remain sufficiently close to the cash-carrying messenger so as to be able to do some good, by providing some assistance in preventing an attempted theft.

With this understanding of the phrase "except when an armed guard accompanies the messenger," Plaintiff's argument cannot stand. Plaintiff contends that she discharged her duty under the policy by requiring Sharon Adcox to "accompany" her to the bank, that is, to "go with" her. Yet Sharon Adcox, armed as she was, was unable to even see the robber approach Plaintiff in the bank parking lot or to observe the robbery itself. Nor was she able to prevent or to attempt to deter the robbery by sheer physical proximity to Plaintiff, by screaming, or by threat of force. Plaintiff could have had an armed guard miles away in Cincinnati, for all the assistance which Sharon Adcox was able to provide to Plaintiff. While the rule of contract construction requires that ambiguities be construed against the drafter (herein the Defendant), the disputed phrase in Plaintiff's insurance policy is not even ambiguous enough to invoke this rule. Plaintiff was simply not accompanied by an armed guard as required by Insuring Agreement II.

Plaintiff also makes a promissory estoppel argument of sorts. She contends that she is entitled to recover the full $15,000 policy coverage because she relied on her insurance agent's representation to the effect that an armed individual following her to the bank in another car complied with the requirements of Insuring Agreement

II. (Deposition of Renny Potter, pgs. 12–16).

This argument is not persuasive. Jack Williams, the insurance agent who sold Plaintiff the insurance policy in question, testified at his deposition that he did not provide any such construction to Plaintiff of the phrase "except when an armed guard accompanies the messenger." (Deposition of Jack C. Williams, pgs. 12–15). Mr. Williams recalled no specific discussion of what the word "accompanies" meant as used in Insuring Agreement II. He testified that he had informed Plaintiff that a reasonableness standard would apply as to deciding what constituted an "armed guard." (Deposition of Jack C. Williams, pg. 12). Not only would the construction which Mr. Williams purportedly gave to Plaintiff not have been a reasonable construction of the contract, but, under 44 C.F.R. Section 80.4(e) and (g), Mr. Williams was the agent of *Plaintiff* when he sold her the insurance rather than the agent of the federal government. This, too, undercuts Plaintiff's argument of promissory estoppel.

## C. CONCLUSION

For the reasons aforesaid, this Court finds that the absence of a genuine issue of material fact has been established by Defendant, and that Defendant's Motion for Summary Judgment must be sustained (Doc. # 14). Plaintiff's Motion for Summary Judgment, accordingly, is overruled (Doc. # 13).

The captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.